UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO:

AQUA LASER STUDIO INC., a Florida
corporation, and DONNA FEINBERG
SHUMAN,

     Plaintiffs,

vs.

THE MEDICAL PROTECTIVE
COMPANY, a foreign company,

     Defendant.

_____ /

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiffs, AQUA LASER STUDIO INC. and DONNA FEINBERG SHUMAN (collectively, "Plaintiffs"), by and through undersigned counsel, hereby file this Complaint against Defendant, THE MEDICAL PROTECTIVE COMPANY ("Defendant" or "MedPro"), and state the following:

### PARTIES, JURISDICTION AND VENUE

1.    This is an action for declaratory judgment pursuant to Chapter 86 of the Florida Statutes in which Plaintiffs AQUA LASER STUDIO INC. ("Aqua Laser") and DONNA FEINBERG SHUMAN ("Shuman") seek a declaration from this Court that the claims asserted against them in the underlying case of *Taylor Stephanos v. Jillian Pierce, et al.,* in the Circuit Court of the Fifteenth Judicial Circuit of Palm Beach County, Florida, Case No.: 50-2023-CA-011495 (the "Stephanos Matter") are covered by the applicable insurance policy, Policy Number U24678 covering the policy period from February 26, 2021, through February 26, 2021 (the "Policy").

1

2.      Venue is proper in the Southern District of Florida because the contract was entered into in the Southern District of Florida and performed in the Southern District of Florida.

3.      Plaintiff, AQUA LASER STUDIO INC. is a Florida corporation which had its principal place of business in Palm Beach County within the Southern District of Florida.

4.      Plaintiff, DONNA FEINBERG SHUMAN is a resident of Palm Beach County within the Southern District of Florida.

5.      Defendant, THE MEDICAL PROTECTIVE COMPANY is a foreign stock insurance company organized and existing under the laws of the State of Indiana with its principal place of business located in Fort Wayne, Indiana.  On information and belief, Defendant MedPro is authorized to conduct business in the State of Florida.

6.      Jurisdiction is based on diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332.

7.      The declarations and damages sought concern an amount of damages in excess of $75,000.00.

8.      All conditions precedent to the filing of this action have been complied with or have been waived.

9.      Plaintiff Aqua Laser secured a business liability Policy through Defendant, MedPro.  A copy of the Policy is attached hereto as **Exhibit "A."**

10.     Plaintiff Shuman is also an insured under the Policy and is entitled to enforce the same.

11.     The Policy provides coverage for claims of liability against the Plaintiffs.

12.     Taylor Stephanos ("Stephanos") worked as a receptionist for Plaintiff Aqua Laser.

13.     Stephanos was also a Patient at Aqua Laser.

2

14.     On December 1, 2021, Stephanos underwent a cosmetic procedure as a patient of Aqua Laser.

15.     Stephanos alleges that during the course of the procedure, she was injured due to the negligence of the provider.

16.     On June 23, 2023, Stephanos filed suit against Plaintiffs and several of Aqua Laser's employees for injuries she sustained while undergoing the procedure at Aqua Laser's office.  A copy of Stephanos' complaint is attached hereto as **Exhibit "B"** (the "Stephanos Complaint").

17.     In the Stephanos Complaint Plaintiffs are accused of negligently providing the professional services using laser equipment.

18.     The Plaintiffs had liability insurance from Defendant MedPro at the times relevant to the claims alleged in the Stephanos Complaint.

19.     Stephanos was not working at the time of the procedure.

20.     Stephanos is not a named insured or an additional insured under the Policy.

21.     Section IV (A) of the Policy reads as follows:

> We [MedPro] have the right and duty to defend any Insured at our expense, and in addition to the Limits of Insurance stated in your Certificate, for any suit brought against any Insured for a claim, even if the suit is groundless or fraudulent.

*See* p. 34, **Exhibit "A."**

22.     Shortly after Stephanos filed her claim against Plaintiffs, Plaintiff informed Defendant and requested the Insurer defend Plaintiffs in the litigation.

23.     On August 31, 2023, Defendant MedPro issued to Plaintiffs a letter styled Declination of Insurance Coverage.  In it, Defendant "respectfully decline[d] the [Plaintiffs'] request for insurance and [announced it] will not defend or indemnify" the Plaintiffs as to

Stephanos' claims.  A copy of the letter is attached hereto as **Exhibit "C."**

24.     Defendant denied that any coverage exists under the Policy because Stephanos was an employee of Plaintiff and an insured at the time of her injury.

25.     Defendant asserted two grounds for finding that no coverage exists.

26.     First, Defendant asserted that the Policy excludes coverage between Named Insureds.  *Id*.

27.     The Policy defines Named Insureds as:

> Each employee . . . <u>but only when</u> providing **professional services** on behalf or under the direction or control of Aqua Laser Studio….

*See* p. 4, **Exhibit "A."** (emphasis added).

28.     Pursuant to the Policy, **professional services** is defined as follows:

> Professional services means peer review and medical treatment for those specialties listed in your Certificate or any other services listed by endorsement, for which and Insured is licensed as required by law….

*Id*. at p. 26.

29.     Stephanos did not provide any **professional services.**  She was merely a receptionist.

30.     Second, Defendant asserted that the Policy excludes coverage for any claim arising out of injury to an employee working for Aqua Laser.  *See* **Exhibit "C."**

31.     At the time of the injury, Stephanos was not serving in her role as Employee. Instead, Stephanos was a Patient of Aqua Laser.

32.     Pursuant to the Policy, Patient is defined as follows:

> Patient means an individual who is undergoing medical treatment and care that is directed by a certified/licensed practitioner of the healing arts….

*See* p. 25, **Exhibit "A."**

33. Plaintiffs believe coverage exists under the Policy because Stephanos was not a Named Insured and was not serving in her role as an Employee; instead she was a Patient at the time of the alleged injuries.

34. Because Defendant denied insurance coverage and its duty to defend Plaintiffs, Plaintiffs were forced to retain the undersigned counsel for the defense of the Stephanos Matter and have become obligated to pay such counsel a reasonable fee therefor.

35. On November 5, 2024, Stephanos accepted a proposal for settlement from Plaintiffs, and by December 20, 2024, had dismissed them from her lawsuit with prejudice.

36. To obtain the dismissal, Plaintiffs themselves funded the settlement payment and their counsel's fees, which together exceeded $75,000.00.

37. The amounts Plaintiffs expended should have been the responsibility of the Defendant under the Policy.

38. A declaratory judgment is necessary to determine under the facts and law whether the applicable Policy covers the damages and whether Defendant was obligated to provide Plaintiffs a defense.

39. There is a bona fide, present dispute amongst the parties regarding their rights and obligations under the Policy.

40. There is a bona fide, present need for the declaration requested herein to determine whether coverage and a duty to defend exists in this case.

41. Plaintiffs' rights are dependent upon the facts set forth herein and the law applicable to these facts.

42. The parties in this action have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or in law.

43.     The antagonistic and adverse interests are all before the Court by proper process.

44.     The relief sought is not merely the giving of legal advice by the Court in the above action, or the answer to questions propounded from curiosity; rather, this relief is a determination on the applicability of language of the Policy and whether the circumstances in this case are covered by the Policy.

45.     Because of the Defendant's actions, Plaintiffs have retained the undersigned counsel for the prosecution of the instant matter and have become obligated to pay them a reasonable fee therefor.

**WHEREFORE**, Plaintiffs AQUA LASER STUDIO INC. and DONNA FEINBERG SHUMAN ask this Court to enter judgment against Defendant THE MEDICAL PROTECTIVE COMPANY and (a) declare that Plaintiffs' insurance Policy provides coverage to the Plaintiffs for the claims of Taylor Stephanos in the Stephanos Matter, (b) declare that that Defendant was obligated to provide insurance coverage and a legal defense to Plaintiffs, (c) award Plaintiffs their costs and reasonable attorneys' fees under Fla. Stat. § 86.121, and (d) grant such other and further relief as the Court deems just and appropriate.

**Plaintiffs request a trial by jury for all issues so triable.**

DATED: March 21, 2025               Respectfully submitted,

PINCUS & CURRIER LLP
*Attorneys for Aqua Laser*
1555 Palm Beach Lakes Blvd., Suite 320
West Palm Beach, FL 33401
561-868-1340
rcurrier@pincusandcurrier.com
cjoly@pincusandcurrier.com

By: */s/ Romin N. Currier*
     Romin N. Currier
     Florida Bar No.: 566985



Aqua Laser Studio
775 W. Indiantown Rd., Ste. 5,
Jupiter, FL 33458

Re: Policy#  U24678

Dear  Aqua Laser Studio

Thank you for choosing CM&F Group, Inc. for your healthcare professional liability insurance needs. CM&F has been in business since 1919 and has provided stable, secure and reliable insurance programs to healthcare practitioners since 1947.  When you consider our 65+ years of experience in the malpractice arena, coupled with the financial superiority of our carrier partners - *you can rest assured that your professional integrity is very well protected.*

**ENCLOSED ARE YOUR POLICY DOCUMENTS:**
1. Multi-Specialty Healthcare Professional - CERTIFICATE
2. Mandatory & Optional Endorsements
3. Acord Certificate of Liability (PROOF OF INSURANCE)

Please review these documents for accuracy and keep them in a safe place. If you have any questions, please call us at l-800-221-4904 or send us an e-mail to: info@cmfgroup.com. Aside from providing access to the highest quality coverages on the market, we are fully committed to delivering superior customer service, so please know that we welcome your call should you have any questions or need assistance at any time.

Your healthcare professional liability policy offers broad coverage, including the following policy features and benefits which we call **"The CM&F Advantage"**.

> **Professional Liability** $100,000/$300,000
> **License Defense** $25,000/$100,000
> **Deposition Defense** $10,000
> **Loss Of Earnings** $2,500 per day/$35,000
> **Biomedical Defense** $10,000

> **Medical Payments** $25,000/$100,000
> **HIPAA Defense** $25,000
> **First Aid Coverage** $15,000
> **Good Samaritan Coverage** Included
> **Assault Upon You** $25,000

If you would like to review your coverage, please visit the CM&F Client Access Portal (**www.MYCMFACCOUNT.com**): The secure CM&F Client Access Portal is updated in real time with payments and balances so that you can track your costs, coverage and renewal dates - at your convenience 24/7. But should you need personal assistance, the CM&F Customer Care Team is at your service Monday - Friday:

| **Customer Service Claim Team at 1-800-221-4904** |
| **Email: info@cmfgroup.com** |

We wish you continued success and thank you again for choosing CM&F!

Sincerely,
The CM&F Group, Inc.

**The Medical Protective Company®**
A STOCK INSURANCE COMPANY
5814 Reed Road, Fort Wayne, Indiana 46835
Strength. Defense. Solutions. Since 1899.

## MULTI-SPECIALTY HEALTHCARE PROFESSIONAL - CERTIFICATE

| Policy Period: | 2021-02-26 To: 2022-02-26 at 12:01 a.m. Standard Time at the address of the First Named Insured. | Certificate Number: | U24678 |
|---|---|---|---|

**Item 1(a) Named Insured:** | N/A | **Student**

**Non-Insured acting in the capacity of an Administrative First Named Insured**

Aqua Laser Studio
Professional Services Specialty:  All Others
Classification:  N/A

**Item 1(b) Additional Insureds:**

**First Named Insured Address:**

775 W. Indiantown Rd., Ste. 5,
Jupiter, FL 33458

| | New Business | X | | | Renewal Business |
|---|---|---|---|---|---|

| COVERAGES: | POLICY TYPE* | | | RETROACTIVE DATE | LIMITS OF LIABILITY | |
|---|---|---|---|---|---|---|
| | Occurrence | Standard Claims Made | Convertible Claims Made | | Per Claim / | Aggregate |
| **PROFESSIONAL LIABILITY** | X | | | | | |
| A. Professional Liability (PL) & | | | | | $100,000 | $300,000 |
| B. Good Samaritan Acts | | | | | Included | Included |
| C. Assault Upon You | | | | | $25,000 | $25,000 |
| D. First Aid | | | | | $15,000 | $15,000 |
| E. Medical Payments | | | | | $25,000 | $100,000 |
| F. Deposition Fees | | | | | $10,000 | $10,000 |
| - Administrative Hearing Expense | | | | | $25,000 | $100,000 |
| - Sexual Misconduct Expense | | | | | $25,000 | $25,000 |
| - Loss of Earnings | | | | | $2,500 | $35,000 |
| - HIPAA Proceeding Expense | | | | | $25,000 | $25,000 |
| - Biomedical Waste Hearing Expense | | | | | $10,000 | $10,000 |
| **WORKPLACE LIABILITY** | X | | | | | |
| A. Healthcare Professional Premises Liability & | | | | | Included | Included |
| B. Personal Injury Liability | | | | | Included | Included |
| *Workplace Liability does not apply if the General Liability Insuring Agreement is made part of your coverage.* | | | | | | |
| **EMPLOYMENT PRACTICES LIABILITY**** | | | | | | |
| **CYBER LIABILITY** | | | | | | |
| **BILLING PRACTICES & REGULATORY** | | | | | | |
| **COMMERCIAL GENERAL LIABILITY** | | | | | | |
| - Each Occurrence Limit | | | | | | |
| - Damages to Premises Rented to an Insured Business | | | | | | |
| - Personal & Advertising Injury | | | | | | |
| - General Aggregate Limit | | | | | | |
| - Product Completed Operations Aggregate | | | | | | |
| - Hired and Non-Owned Auto | | | | | | |
| *General Liability does not apply if the Workplace Liability Insuring Agreement is made part of your coverage.* | | | | | | |

**FORMS & ENDORSEMENTS:**

SEE POLICY FORMS & ENDORSEMENTS SCHEDULE

**Master Policy Number:** MMPOC19190

IN WITNESS WHEREOF, The Medical Protective Company has caused this policy to be signed by its President and Corporate Secretary (and countersigned by its duly Authorized Representative. where necessary).

*President*

*Secretary*

| Premium: | $3,167.00 |
|---|---|
| Surcharges: | $0.00 |
| Taxes: | $0.00 |
| TOTAL: | $3,167.00 |

For Service or questions, please call:

CM&F Group, Inc. 1-800-221-4904

Countersignature / Authorized Representative:

**NOTICE**
*THIS POLICY CONTAINS CLAIMS-MADE COVERAGE.
** CLAIM EXPENSE IS PAID WITHIN THE LIMITS OF LIABILITY.
LIMITS MAY CHANGE BY COVERAGE PROVISION OR ENDORSEMENT.
PLEASE READ YOUR POLICY AND ENDORSEMENTS CAREFULLY.
DISCUSS WITH YOUR INSURANCE AGENT IF NEEDED.

# The Medical Protective Company®

**A STOCK INSURANCE COMPANY**
**5814 Reed Road, Fort Wayne, Indiana  46835**
Strength. Defense. Solutions. Since 1899.

### MULTI-SPECIALTY HEALTHCARE PROFESSIONAL
### MASTER POLICY
### CERTIFICATE OF INSURANCE
### SCHEDULE OF POLICY FORMS & ENDORSEMENTS

Forms and Endorsements of your Certificate are as follows:

*Form #*                    *Description*

| Form No. | Edition Date | Title |
|----------|--------------|-------|
| MCL | (01/19) | Cover Letter |
| 18011 | (01/14) | MPS Multi-Specialty Healthcare Professionals Policy Certificate |
| 18507 | (08/13) | MPS Multi-Specialty Healthcare Professionals Form & Endorsement Schedule |
| 18505 | (08/13) | MPS Multi-Specialty Healthcare Professionals Policy Schedule of Insureds |
| 18200 | (08/13) | Table of Contents |
| 18511 | (08/13) | General Definitions |
| 18519 | (08/13) | General Conditions |
| 18522 | (08/13) | General Exclusions |
| 18528 | (08/13) | Professional Liability Insuring Agreement - Occurrence |
| 18550 | (08/13) | Workplace Liability Insuring Agreement - Occurrence |
| 19120 | (11/16) | MPS Economic Sanctions Exclusion Endorsement |
| 19099 | (06/14) | MPS Blanket Separate Limit Endorsement |
| 19236 | (08/13) | MPS Medical Director Coverage Endorsement |
| 19187 | (08/13) | Biomedical Waste Hearing Expense Endorsement - Occurrence |
| 19218 | (08/13) | Reuse or Multidose Supply Procedure Exclusion Endorsement |
| 19631 | (08/13) | Procedures Exclusion Endorsement |
| 18707 | (08/13) | Florida Amendatory Endorsement |

18507                    All other terms and conditions of the Policy remain unchanged.                    08/13

EXHIBIT A – PAGE 003

# The Medical Protective Company®
### A STOCK INSURANCE COMPANY
### 5814 Reed Road, Fort Wayne, Indiana  46835
Strength. Defense. Solutions. Since 1899.

### *MULTI-SPECIALTY HEALTHCARE PROFESSIONAL*
### *MASTER POLICY*
### *SCHEDULE OF INSUREDS ENDORSEMENT*

Item 1(a) of the **CERTIFICATE** is as follows:

| ITEM 1(a) NAMED INSURED | | | PROFESSIONAL SERVICES SPECIALTY | |
| --- | --- | --- | --- | --- |
| CLASS | RETROACTIVE DATE* (If Applicable) | TYPE I) Individual E) Entity S) Student | MODIFIED COVERAGE ENDORSEMENT NUMBER | PREMIUM SURCHARGE TAXES (If Applicable) |
| Aqua Laser Studio | | E | Not Applicable | Included |
| Each employee, shareholder, partner, volunteers or independent contractor Healthcare Professional of Aqua Laser Studio but only while providing professional services on behalf or under the direction or control of Aqua Laser Studio excluding any physician, podiatrist, chiropractor, optometrist, nurse midwife, certified registered nurse anesthetist or dentist unless designated as an Insured under your Certificate or by endorsement listed on your Certificate. | | I | Not Applicable | Included |

Item 1(b) of the **CERTIFICATE** is as follows:

| ITEM 1(b) ADDITIONAL INSURED | AFFILIATED ITEM 1(a) NAMED INSURED | PREMIUM SURCHARGE TAXES (If Applicable) |
| --- | --- | --- |
| | | |

All other terms and conditions of the Policy remain unchanged.

18505                                                                                                       08/13

# THE MEDICAL PROTECTIVE COMPANY
## FLORIDA
## MULTI-SPECIALTY HEALTHCARE PROFESSIONALS
## MASTER POLICY

## Table of Contents

**18511 (08/13)**
*General Definitions*

**18519 (08/13)**
*General Conditions*

**18522 (08/13)**
*General Exclusions*

**18528 (08/13)**
*Professional Liability Insuring Agreement - Occurrence*                    **Section**

| | |
|---|---|
| Coverages | I. |
| Administrative Hearing Provision | II. |
| Sexual and Physical Misconduct Provision | III. |
| Defense Costs, Charges, and Expenses | IV. |
| HIPPA Proceedings | V. |
| Who is an Insured | VI. |
| Limits of Insurance | VII. |

**18550 (08/13)**
*Workplace Liability Insuring Agreement - Occurrence*

| | |
|---|---|
| Coverages | I. |
| Defense Costs, Charges, and Expenses | II. |
| Who is an Insured | III. |
| Limits of Insurance | IV. |

# The Medical Protective Company®

**A STOCK INSURANCE COMPANY**
**5814 Reed Road, Fort Wayne, Indiana  46835**
Strength. Defense. Solutions. Since 1899.

*MULTI-SPECIALTY HEALTHCARE PROFESSIONAL*
*MASTER POLICY*
*BLANKET SEPARATE INDIVIDUAL LIMIT ENDORSEMENT*

In consideration of the payment of a modification of premium, if any, it is understood and agreed:

The following exclusion is added to the *General Exclusions*:

Arising out of **your** liability for the acts or omissions of any physician, podiatrist, chiropractor, optometrist, nurse midwife, certified registered nurse anesthetist, or dentist unless designated as an Insured under **your Certificate** or by endorsement listed on **your Certificate**.

The WHO IS AN INSURED Section, Paragraph A. 3. is deleted and replaced with the following, but only for the Multi-Specialty Healthcare Professional-Master Policy-Professional Liability Insuring Agreement and the Multi-Specialty Healthcare Professional-Master Policy-Workplace Liability Insuring Agreement:

If **You**, as designated in Item 1(a) of **your Certificate** is a partnership or corporation:

    a.  **Your** employees, shareholders, partners, volunteers, and independent contractor Healthcare Professionals are also a 1(a) **Named Insured**(s), but only if **your professional services** are provided within the course and scope of their employment by **you** or under **your** direct control and supervision, and while performing duties related to the conduct of **your professional services.**

    b.  **Your** partners, executive officers, directors, or stockholders are also Insureds, but only with respect to the conduct of **your professional services**.

This section does not apply to any physician, podiatrist, chiropractor, optometrist, nurse midwife, certified registered nurse anesthetist, or dentist unless designated as an Insured under **your Certificate** or by endorsement listed on **your Certificate**.

The LIMITS OF INSURANCE Section, Paragraph B. 1. and 2 are hereby deleted and replaced with the following, but only for the Multi-Specialty Healthcare Professional-Master Policy-Professional Liability Insuring Agreement and the Multi-Specialty Healthcare Professional-Master Policy-Workplace Liability Insuring Agreement:

1.  As a separate limit for any 1(a) **Named Insured(s)** when providing **professional services** for the entity stated in Item 1(a) as the **Named Insured** in **your Certificate**;

2.  As a shared limit:

    a.  for any 1(a) **Named Insured** individual, when a 1(a) **Named Insured** entity(ies) and a corresponding 1(a) **Named Insured** individual are both named in the same **claim**, **potential claim** or **suit**. The 1(a) **Named Insured** entity(ies) does not retain their separate limit but will share with the 1(a) **Named Insured** individual when named in the same **claim**, **potential claim**, or **suit**. If more than one 1(a) **Named Insured** individual is named in the same **claim**, **potential claim** or **suit** with any 1(a) **Named Insured** entity(ies), such entity(ies) will share each individual limit on a pro-rata basis, up to the stated Each Event limit for such 1(a) **Named Insured** individual;

    b.  for any other Insured(s) listed in **your Certificate** or identified on an endorsement as listed in **your Certificate**, including the **Additional Insured(s)** named in Item 1(b).

19099                            06/14

The LIMITS OF INSURANCE Section, Paragraph C. 1. And 2. are hereby deleted and replaced with the following, but only for the Multi-Specialty Healthcare Professional-Master Policy-Professional Liability Insuring Agreement and the Multi-Specialty Healthcare Professional-Master Policy-Workplace Liability Insuring Agreement:

1.  As a separate limit for any 1(a) **Named Insured(s)** when providing **professional services** for the entity stated in Item 1(a) as the **Named Insured** in **your Certificate**;

2.  As a shared limit:
    a.  for any 1(a) **Named Insured** individual, when a 1(a) **Named Insured** entity(ies) and a corresponding 1(a) **Named Insured** individual(s) are both named in the same **claim**, **potential claim** or **suit**. The 1(a) **Named Insured** entity(ies) does not retain their separate limit but will share with the 1(a) **Named Insured** individual when named in the same **claim**, **potential claim**, or **suit**. If more than one 1(a) **Named Insured** individual is named in the same **claim**, **potential claim** or **suit** with any 1(a) **Named Insured** entity(ies), such entity(ies) will share each individual limit on a pro-rata basis, up to the stated Aggregate Limit for such 1(a) **Named Insured** individual;

    b.  for any other Insureds listed in **your Certificate** or identified on an endorsement as listed in **your Certificate**, including the **Additional Insured(s)** named in Item 1(b).

All other terms and conditions of the Policy remain unchanged.

19099

# The Medical Protective Company®

**A STOCK INSURANCE COMPANY**
**5814 Reed Road, Fort Wayne, Indiana  46835**
Strength. Defense. Solutions. Since 1899.

### *MULTI-SPECIALTY HEALTHCARE PROFESSIONAL MASTER POLICY*
### *MEDICAL DIRECTOR COVERAGE ENDORSEMENT*

In consideration of a modification of premium, if any, and as identified by this endorsement number in **your Certificate** or as listed in the Modified Coverage column on the Schedule of Insureds, if applicable, it is understood and agreed:

The following exclusions are added to the *General Exclusions*:

Arising from the rendering or failure to render **treatment** by **your medical director**, unless it was provided in an emergency and without an expectation of compensation;

Arising out of the **medical director's** failure to comply with collaborative agreement protocols required by law.

The Following provision is added to the WHO IS AN INSURED Section, but only for the Multi-Specialty Healthcare Professional-Master Policy-Professional Liability Insuring Agreement and the Multi-Specialty Healthcare Professional-Master Policy-Workplace Liability Insuring Agreement:

**Your medical director** while acting within the course and scope of his or her duties as **your medical director,** but only for the **medical director's** vicarious liability based solely on **professional services** by **you,** or any other healthcare professional for whose acts or omissions **you** are legally responsible. In no event is there any coverage provided under this Policy for **medical directors** who have other valid and collectable insurance.

The following definition is added to the *General Definitions*:

**Medical director** means a healthcare provider employed or contracted by **you** in an administrative capacity.

All other terms and conditions of the Policy remain unchanged.

19236                                                                                                08/13

# The Medical Protective Company®

**A STOCK INSURANCE COMPANY**
**5814 Reed Road, Fort Wayne, Indiana  46835**
Strength. Defense. Solutions. Since 1899.

*MULTI-SPECIALTY HEALTHCARE PROFESSIONAL*
*MASTER POLICY*
*BIOMEDICAL WASTE HEARING EXPENSE ENDORSEMENT*
*OCCURRENCE*

In consideration of a modification or premium, if any, it is understood and agreed:

The following Coverage is added to the Multi-Specialty Healthcare Professional-Master Policy-Professional Insuring Agreement:

Biomedical Waste Hearing Expense

A.  **We** have the right and duty to defend **you** in any **biomedical waste hearing** and shall pay any necessary **biomedical waste hearing expenses**, regardless if the basis for that **biomedical waste hearing** is groundless, false, or fraudulent.  However, **your** defense in any **biomedical waste hearing** must arise from an **event** or **your professional services** to a **patient** which would otherwise be covered under this Insuring Agreement and for which there is no other insurance available, and that takes place during **your policy period**.

B.  Each **Biomedical Waste Hearing Expense** Limit shall be the amount stated in **your Certificate**.  **Our** duty to defend a **biomedical waste hearing** shall cease when the limit is exhausted.  The maximum amount of the **biomedical waste hearing expenses** shall be the Aggregate **Biomedical Waste Hearing Expense** Limit stated in **your Certificate**.  All **biomedical waste hearings** arising from the same series of continuous, related, or repeated allegations shall be considered arising out of one hearing.

Upon the exhaustion of the applicable limit stated in **your Certificate**, **you** shall become responsible for all further **biomedical waste hearing expense** arising from the proceeding.  If **you** cannot come to an agreement with the attorney assigned by the **Company** regarding the payment of future fees and costs, **you** shall take all steps necessary to allow the attorney to withdraw from the matter.

C.  **We** shall not pay for **biomedical hearing expenses** arising out of:
1.  Any defense of **criminal prosecution**;
2.  Any circumstance of which **you** were aware or which **you** reasonably believed, would result in an **biomedical waste hearing** prior to **your policy period**;
3.  Any legal matter other than an **biomedical waste hearing**;
4.  Any costs an Insured incurs, including but not limited to, loss of earnings, with regard to an **biomedical waste hearing**, unless it is a cost that **we** specifically ask an Insured to incur;
5.  Any legal action commenced by **you** including, but not limited to, a **biomedical waste hearing**; or,
6.  Fines, penalties, punitive, exemplary, or multiplied damages.

D.  Appeals

All **biomedical waste hearing expenses** incurred with respect to appeals and proceedings, or a series of continuous or interrelated appeals and proceedings, arising out of a **biomedical waste**

19187

08/13

**hearing** shall be considered as part of the original **biomedical waste hearing**.  Payments for all such **biomedical waste hearing expenses** shall not exceed the **Biomedical Waste Hearing Expense** Limit stated in **your Certificate**.

E.   Representation at a **Biomedical Waste Hearing**

1.   **We** shall pay **biomedical waste hearing expenses** in excess of any other coverage, no matter how those coverages are described, up to the **Biomedical Waste Hearing Expense** Limit stated in **your Certificate**.
2.   **We** shall have the right to select any attorney to represent an Insured in the defense of a **biomedical waste hearing**.

F.   Action for Other Allegations

**We** shall pay for **biomedical waste hearing expenses** arising out of an **biomedical waste hearing** where **bodily injury**, **property damage** or other matters which may be deemed uninsurable by the law are alleged, notwithstanding any exclusion to the contrary, but only if in final adjudication such allegations are found to be false or unfounded.  If an Insured is found liable for any of these allegations, **you** shall reimburse **us** for all **biomedical waste hearing expenses** arising out of that **biomedical waste hearing**.

The following definitions are added to the *General Definitions*:

**Biomedical waste hearing** means a civil hearing or suit brought in a court by any federal or state environmental protection agency alleging **you** violated a law or regulation governing the disposal of **biomedical waste**.

**Biomedical waste hearing expense** means reasonable fees for necessary legal work done by an attorney and other reasonable fees for necessary expenses arising out of the defense of a **biomedical waste hearing**.

Exclusion R. in the *General Exclusions* is deleted and replaced with the following:

R.   Arising out of:

1.   The actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **pollutants**;
2.   Any direction, request, demand, order or statutory or regulatory requirement to test for, monitor, investigate, cleanup, remove, contain, treat, detoxify, or neutralize **pollutants** or in any way respond to or assess the effects of **pollutants**; or,
3.   Other than **biomedical waste hearing expenses**, any cost, charge, expense or request for reimbursement arising out of 1. or 2. above.

All other terms and conditions of the Policy remain unchanged.

# The Medical Protective Company®
**A STOCK INSURANCE COMPANY**
**5814 Reed Road, Fort Wayne, Indiana  46835**
Strength. Defense. Solutions. Since 1899.

*MULTI-SPECIALTY HEALTHCARE PROFESSIONAL*
*MASTER POLICY*
*ECONOMIC SANCTIONS EXCLUSION ENDORSEMENT*

In consideration of a modification of premium, if any, it is understood and agreed:

The following exclusion is added to the *General Exclusions*:

> Or circumstance involving the coverage provided by this Policy that would be in violation of any U.S. economic trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control.  Under this exclusion, all such coverage shall be null and void. Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any **claim** or **suit** that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

All other terms and conditions of the Policy remain unchanged.

19120

EXHIBIT A – PAGE 011

# The Medical Protective Company®
**A STOCK INSURANCE COMPANY**
**5814 Reed Road, Fort Wayne, Indiana  46835**
Strength. Defense. Solutions. Since 1899.

*MASTER POLICY*
*FLORIDA AMENDATORY ENDORSEMENT*

Exclusion S. of the *General Exclusions* is deleted and replaced with the following:

For fines, penalties, punitive, exemplary or multiplied damages.

The following Exclusion is added to the *General Exclusions*:

Arising out of:

1.  The actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **biomedical waste** or nuclear waste;

2.  Any direction, request, demand, order or statutory or regulatory requirement to test for, monitor, investigate, cleanup, remove, contain, treat, detoxify, neutralize or in any way respond to or asses the effects of **biomedical waste** or nuclear waste; or

3.  Any cost, charge, expense or request for reimbursement arising out of 1. or 2. above.

The *Assistance and Cooperation* Condition in the *General Conditions* is deleted and replaced with the following:

Assistance and Cooperation

1.  After any **potential claim**, **claim** or **suit**, the Insured shall not admit any liability, contract any expense, voluntarily assume any liability in any situation, nor make or contract any settlement of the **potential claim, claim** or **suit**, except at the Insured's own cost and responsibility, without **our** written authorization.

2.  **Our** duty to defend and pay any **potential claim**, **claim** or **suit** is strictly conditioned upon the Insured's cooperation with **us** in the investigation, defense, and/or settlement of any matter to which this Policy applies, as requested by **us**.  Such cooperation shall include, but is not limited to:

    a.  attending and testify at any deposition, hearing, or trial;
    b.  assistance in securing and giving evidence;
    c.  obtaining the attendance of witnesses; and,
    d.  doing nothing to prejudice **our** ability to investigate, defend, and/or manage any matter to which this Policy applies;
    e.  submitting to recorded and/or sworn statements and to examinations under oath as requested by **us**;
    f.  promptly producing, at **our** request, any records, documents and other information in the Insured's possession, custody or control; and,
    g.  authorize **us** to obtain any records or other information.

3.  If a **potential claim**, **claim** or **suit** is, or might be, covered under any other policy of insurance, the Insured shall promptly give notice to such other insurers.  The Insured shall also provide **us** with copies of the applicable policies.  The Insured shall further act in good faith to enforce any rights held under such policies, including the right to a defense.

4. If a notice of intent to file a **claim** or **potential claim** is made against **you** as a result of **professional services** rendered, or that should have been rendered, **you** shall cooperate fully in the review process prescribed under Florida Statute §766.106.

The *Special Rights and Duties of **First Named Insured*** Condition in the *General Conditions* is deleted and replaced with the following:

Special Rights and Duties of **Named Insured**

1. If there is more than one Insured, the **Named Insured** in Item 1(a) of **your Certificate** shall act as the agent of, and with full authority to bind, all Insureds listed in **your Certificate** or identified on an endorsement as listed in **your Certificate**.  This shall include, but is not limited to:

   a. giving and receiving any notice under this Policy including, but not limited to, cancellation, nonrenewal, or settlement;
   b. accepting, requesting or receiving endorsements issued to form a part of this Policy;
   c. payment of premiums and receipt of return premiums;
   d. purchasing or rejecting any extended reporting period (ERP) for any Insured, if applicable.

2. The **Named Insured** is authorized to request or accept changes in this Policy or **your** coverage on behalf of all Insureds listed in **your Certificate** or identified on an endorsement as listed in **your Certificate**.  This Policy or **your** coverage can only be changed by a written endorsement **we** issue and make a part of this Policy or **your** coverage.  The **Named Insured** shall notify **us** and all Insureds listed in **your Certificate** or identified on an endorsement as listed in **your Certificate,** in writing, of any changes that might affect the insurance provided under this Policy.

The *Cancellation, and Nonrenewal and/or Termination of Coverage* Condition in the *General Conditions* is deleted and replaced with the following:

Cancellation, and Nonrenewal and/or Termination of Coverage

1. **Your policy period** may be canceled by **you** by mailing written notice to **us,** or any of **our** authorized representatives, requesting cancellation.  The cancellation shall be effective on the date requested or the date the notice is received by **us**, whichever is later.

2. Any coverage contained within this Policy with respect to any Insured listed in **your Certificate** or identified on an endorsement as listed in **your Certificate** may be terminated by **you** by mailing written notice to **us,** or any of **our** authorized representatives, requesting the coverage termination.  The termination shall be effective on the date requested or the date the notice is received by **us**, whichever is later.

3. **Your policy period**, or any coverage contained therein, may also be canceled or terminated by **us**.  **We** may cancel **your policy period** for any reason if it has been in effect for less than 90 days.  If **your policy period** has been in effect for at least 90 days, or is a renewal policy, **we** may only cancel for any one of the following reasons:

   a. a material misrepresentation by an Insured listed in **your Certificate** or identified on an endorsement as listed in **your Certificate**;
   b. nonpayment of the premium required under this Policy;
   c. an Insured listed in **your Certificate** or identified on an endorsement as listed in **your Certificate** fails to comply with underwriting requirements established by **us** within 90 days from the beginning of the **your policy period**;
   d. a substantial change in the risk covered; or,
   e. if **we** cancel all such policies for a given class of policyholders.

18707                                                                                                          08/13

4.   **We** will send notice of the cancellation to **you** at **your** last address on record with **us**.  **We** will also provide notice to the Florida Department of Health at 4052 Bald Cypress Way, Tallahassee, FL 32399.  The notice will state when, not less than 60 days thereafter, such cancellation shall be effective. However, only 10 days notice will be required to cancel for nonpayment of premium or loss of license. The notice will also contain the specific reason for the cancellation.

5.   If **you** cancel **your policy period** earned premium shall be computed in accordance with the standard short rate tables and procedure.  However, if those short rate tables or procedures result in a return premium that is less than 90% of the pro rata unearned premium, earned premium shall be computed pro rata. If **you** cancel or terminate any coverage contained therein, with respect to any Insured listed in **your Certificate** or identified on an endorsement as listed in **your Certificate**, earned premium shall be computed pro rata. If **we** cancel **your policy period**, or terminate any coverage contained therein,, earned premium shall be computed pro rata. If **we** cancel the Policy, earned premium shall be computed pro rata.   Premium adjustments shall be made within a reasonable period of time after cancellation.   However, payment or tender of unearned premium shall not be a condition of cancellation.

6.   If **you** have provided **us** with all of the information needed to determine **your** renewal premium, then **we** shall give the **First Named Insured** written notice of **your** renewal premium at least 45 days prior to the end of **your policy period.**

7.   If **we** nonrenew **your policy period** for any reason other than non-payment of premium, **we** shall mail or deliver written notice of nonrenewal to **you** at **your** last known address at least 90 days prior to the end of **your policy period**.  However, only 10 days notice will be required to nonrenew for loss of license.  **We** will also provide notice to the Florida Department of Health at 4052 Bald Cypress Way, Tallahassee, FL 32399. The notice will also contain the specific reason for the nonrenewal.

8.   If **we** nonrenew an Insured's coverage, the Insured's coverage shall terminate on the earlier of:

   a.   the date stated on the cancellation or nonrenewal notice; or,
   b.   the date the Insured procures replacement coverage.

9.   If **we** intend to increase **your** premium at renewal, **we** shall provide notice to **you** at least 45 days prior to the end of **your policy period**. If **we** fail to provide such notice, **we** will continue **your** coverage under the same terms and rate as applied during **your** most recently expired **policy period** until sufficient notice has been provided.  However, if the rate filing in effect during this period would have resulted in a premium reduction, the premium for this extension of coverage shall be based upon the later rate filing.

10.  If an offer to renew contains a change in coverage, **we** must give **you** written notice of the change least 45 days prior to the end of **your policy period**.  Receipt of **your** premium payment for **your** renewal by **us** is deemed to be acceptance of the new coverage terms by the **Named Insured**. If **we** fail to provide such notice, the original coverage terms remain in effect until **your** next renewal and the proper service of the notice, or until the effective date of replacement coverage obtained by the **Named Insured**, whichever occurs first.

The *Service of Suit* Condition in the *General Conditions* is deleted and replaced with the following:

Service of Suit

In the event of **our** failure to pay any amount claimed to be due hereunder, **we**, at **your** request, will submit to the jurisdiction of a court of competent jurisdiction within the United States.  Nothing in this

condition constitutes or should be understood to constitute a waiver of **our** rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.  It is further agreed that service of process in such **suit** may be made upon Counsel, Legal Department, The Medical Protective Company, 5814 Reed Road, Fort Wayne, IN 46835 or **our** representative, and that in any **suit** instituted against **us** upon this Policy, **we** will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, **we** hereby designate the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successors in office, as **our** true and lawful agent upon whom may be served any lawful process in any action, suit, or proceeding instituted by **you** or on **your** behalf or any beneficiary hereunder arising out of this Policy of insurance, and hereby designates the above named agent as the person to whom the said officer is authorized to mail such process or a true copy thereof.

For the purposes of this paragraph, the term "**suit**" means an arbitration, it is understood that the arbitration will be held pursuant to Florida statue in the county in which **you** reside.  Additionally, the arbitration will be binding upon **you** only if the arbitration is mutually agreed upon in advance, by both **you** and **us**.

The following Condition is added to the *General Conditions*:

Contact Information

Insureds may contact **us** at 800-4MEDPRO to present inquiries or obtain information about coverage and for assistance in resolving complaints.

The definition of **Pollutants** in the *General Definitions* deleted and replaced with the following:

**Pollutants** means any solid, liquid, gaseous, or thermal irritant or contaminant including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, asbestos, asbestos containing materials, lead, lead containing materials and waste.  Waste includes materials to be recycled, reconditioned, or reclaimed.

All other terms and conditions of the Policy remain unchanged.

# The Medical Protective Company®

**A STOCK INSURANCE COMPANY**
**5814 Reed Road, Fort Wayne, Indiana 46835**
Strength. Defense. Solutions. Since 1899.

*MULTI-SPECIALTY HEALTHCARE PROFESSIONAL*
*MASTER POLICY*
*GENERAL CONDITIONS*

---

Each condition contained in this form, or in any attached form, is a separate and distinct condition precedent to coverage. Please read and review each condition carefully.

These General Conditions apply to all Insuring Agreements selected under this Policy. **Failure to abide by a condition by an Insured may result in the denial of coverage.**

A.    Coverage Territory

This Policy shall apply to an **event** anywhere in the world, as long as the Insured had prior approval to provide such **professional services** from the appropriate governmental authorities and the **Company**, provided the **claim** is **first made** and **suit** is brought within the **Coverage Territory**.

B.    Reporting Requirements: Duties in the Event of a **Potential Claim**, **Claim** or **Suit**

Our duty to investigate, defend and pay for any **potential claim**, **claim** or **suit** is strictly conditioned upon an Insured's compliance with the following reporting requirements:

1.    If an **event** takes place, which gives rise to a **potential claim** for which coverage may be provided, the Insured shall give written notice to **us**, or **our** authorized representative, as soon as possible. Such written notice shall contain:
    a.    the identity of all Insureds implicated;
    b.    all reasonably obtainable information with respect to the time, place and circumstances of the **event**;
    c.    the nature, extent and circumstances of the injury and damage;
    d.    the names and addresses of any injured persons;
    e.    the names and addresses of available witnesses; and
    f.    the factual basis for the Insured's belief that a **claim** is reasonably likely to be made, as well as the date the Insured first came to this belief.
2.    The Insured must notify **us**, or **our** authorized representative, immediately, in writing, of any **claim** or **suit** against the Insured. Such written notice shall contain:
    a.    the identity of all Insureds implicated;
    b.    all reasonably obtainable information with respect to the time, place and circumstances of the **event**;
    c.    the nature, extent and circumstances of the injury and damage;
    d.    the names and addresses of any injured persons;
    e.    the names and addresses of available witnesses;
    f.    the specific facts of the **claim** or **suit**, including the date **first made** or served; and,
    g.    copies of all demands, notices, summons, **suit** papers or other legal documents received by any Insured.

EXHIBIT A – PAGE 016

C.    Duties in the Event of an **Administrative Hearing** or **HIPAA Proceeding**

1. **You** shall notify **us** as soon as possible of any **administrative hearing** or **HIPAA proceedings**.
2. The **Company** shall have no duty to pay any **administrative hearing expense** and/or **HIPAA proceeding expenses** incurred by an attorney not retained or approved, in writing, by the **Company** to represent the Insured.
3. The Insured shall:
   a. send **us**, as soon as possible, copies of any notices, summons, or legal papers received in connection with the **administrative hearing** or **HIPAA Proceeding**;
   b. furnish **us**, upon request, with records and other information and submit to an interview by **us** or **our** representatives concerning the full extent of an Insured's knowledge of the events leading to the **administrative hearing** or **HIPAA Proceeding**. **We** shall also be entitled to immediately receive, upon request, copies of any agency or departmental correspondence the Insured received relating to the **administrative hearing** or **HIPAA Proceeding**, including specifically any correspondence which may have predated the date of application for coverage; and,
   c. cooperate and assist **us** with all reasonable requests in the handling of an **administrative hearing** or **HIPAA Proceeding**, including, but not limited to:
      i.   attending and testifying at any depositions and hearings;
      ii.  securing and giving evidence; and,
      iii. obtaining the attendance of witnesses.

D.    Assistance and Cooperation

1. After any **potential claim**, **claim** or **suit**, the Insured shall not admit any liability, contract any expense, voluntarily assume any liability in any situation, nor make or contract any settlement of the **potential claim, claim** or **suit**, except at the Insured's own cost and responsibility, without **our** written authorization.
2. **Our** duty to defend and pay any **potential claim, claim** or **suit** is strictly conditioned upon the Insured's cooperation with **us** in the investigation, defense, and/or settlement of any matter to which this Policy applies, as requested by **us**.  Such cooperation shall include, but is not limited to:
   a. attending and testifying at any deposition, hearing, or trial;
   b. assistance in securing and giving evidence;
   c. obtaining the attendance of witnesses; and,
   d. doing nothing to prejudice **our** ability to investigate, defend, and/or manage any matter to which this Policy applies;
   e. submitting to recorded and/or sworn statements and to examinations under oath as requested by **us**;
   f. promptly producing, at **our** request, any records, documents and other information in the Insured's possession, custody or control; and,
   g. authorize **us** to obtain any records or other information.
3. If a **potential claim**, **claim** or **suit** is, or might be, covered under any other policy of insurance, the Insured shall promptly give notice to such other insurers.  The Insured shall also provide **us** with copies of the applicable policies.  The Insured shall further act in good faith to enforce any rights held under such policies, including the right to a defense.

E.    Legal Action Against **Us**

No person or organization has a right under this Policy:

1. To join **us** as a party or otherwise bring **us** into a **suit** asking for damages from an Insured; or,

2.  To sue **us** under this Policy unless all of its terms have been fully complied with.

A person or organization may sue **us** to recover on an agreed settlement or on a final judgment against an Insured obtained after an actual trial; but **we** will not be liable for damages that are not payable under the terms of this Policy or that are in excess of the applicable Limit of Insurance as stated in **your Certificate**.  An agreed settlement means a settlement and release of liability signed by **us**, the Insured and the claimant or the claimant's legal representative.

A person or organization may sue **us** to recover up to the Limit of Insurance as stated in **your Certificate** only after liability has been decided by:

1.  A trial, after which a judgment has been entered; or,
2.  A written agreement signed by **you, us** and the party making the **claim.**

F.      Bankruptcy or Insolvency

**You** or **your** estate's bankruptcy or insolvency shall not relieve **us** of **our** obligations under this Policy.

G.      Other Insurance

Unless otherwise noted in an Insuring Agreement:

1.  If any other valid and collectible insurance is available to the Insured with respect to any liability arising from a **potential claim**, **claim** or **suit** which is covered by this Policy, and such other insurance is afforded under a Policy or **extended reporting period** issued by a past, present or future parent, subsidiary or affiliate of the **Company**:
    a.  if the Insured has secured coverage from the **Company** or any of its affiliates on a **non-standard Policy**, then the **Company's** duty to pay will be confined to the **non-standard Policy**; or
    b.  if subsection (a) does not apply, and an Insured is also an Insured under another **Company** policy, then any duty to pay is on a pro-rata basis.
2.  If there is any other insurance policy or risk transfer instrument, including but not limited to, self-insured retentions, deductibles, or other alternative arrangements ("other insurance"), that applies to any amount payable under this Policy, such other insurance must pay first. It is the intent of this Policy to apply only to the amounts covered under this Policy which exceed the available limit of all deductibles, limits of liability or self-insured amounts of the other insurance, whether primary, contributory, excess, contingent, or otherwise. This insurance will not contribute with any such other insurance.

This Policy applies to the amount of loss, which is more than:

1.  The limits of insurance of the other insurance; and,
2.  The total of all deductibles and self-insured amounts under all such other insurance.

This clause does not affect the provisions of the Limits of Insurance section of this Policy.

H.      Transfer of Rights of Recovery Against Others to **Us**

If the Insured has rights to recover all or part of any payment **we** have made under this Policy, those rights are transferred to **us**. The Insured shall do nothing to impair them. At **our** request, the Insured shall bring **suit** or transfer those rights to **us** and help **us** enforce them.

EXHIBIT A - PAGE 018

I.     Transfer of **Your** Rights and Duties under this Policy

    1.   **Your** rights and duties under this Policy may not be assigned or transferred without **our** written consent.

    2.   If **you** die or are declared legally incompetent, **your** rights and duties will be transferred to **your** legal representative, but only while acting within the scope of his or her duties as such.

J.     Rights and Duties of the **Master Policyholder**

The **Master Policyholder** retains the Policy but has no rights, duties, or obligations to any Insured under this Policy.

K.    Special Rights and Duties of **First Named Insured**

    1.   If there is more than one Insured, the **First Named Insured** in Item 1(a) of **your Certificate** shall act as the agent of, and with the full authority to bind, all Insureds listed in **your Certificate** or identified on an endorsement as listed in **your Certificate**.  This shall include, but is not limited to:

        a.   giving and receiving any notice under this Policy including, but not limited to, cancellation, nonrenewal, or settlement;

        b.   accepting, requesting or receiving endorsements issued to form a part of this Policy;

        c.   payment of premiums and receipt of return premiums;

        d.   purchasing or rejecting any **extended reporting period** (ERP) for any Insured, if applicable.

    2.   The **First Named Insured** is authorized to request or accept changes in this Policy or to **your** coverage on behalf of all Insureds listed in **your Certificate** or identified on an endorsement as listed in **your Certificate**.  This Policy or **your** coverage can only be changed by a written endorsement **we** issue and make a part of this Policy or **your** coverage.  The **First Named Insured** shall notify **us** and all Insureds listed in **your Certificate** or identified on an endorsement as listed in **your Certificate,** in writing, of any changes that might affect the insurance provided under this Policy.

L.     Conditions of Duties Upon Payment of Premium

The **Company's** duty to perform under the Policy with respect to **your** coverage is strictly conditioned upon **your** payment of the premium when due.  Similarly, the **Company's** duty to renew **your** coverage provided under the Policy shall be strictly conditioned upon the payment of **your** renewal premium by the date stated in **your** renewal premium notice.  Therefore, **your** coverage shall not be deemed to have been issued, delivered or renewed, and shall not be applicable to any matter which would otherwise be covered herein, until:

    1.   **Your** premium has been paid in full; or,

    2.   If the **Company** has agreed to finance **your** coverage, when the first installment has been paid in full.

However, if payment is made by check, electronic transfer, credit card or money order, it shall not be considered "paid in full" until honored by the payer's bank.

M.    Titles of Paragraphs

Titles of paragraphs are inserted solely for convenience of reference and shall not be deemed to limit, expand, or otherwise affect the provisions to which they relate.

EXHIBIT A - PAGE 019

N.     Conformance to Statute

To the extent a term of this Policy conflicts with a statute of the state within which this Policy is issued, the term shall be deemed amended so as to conform to minimum requirements of the statute.

O.     Representations and Change Provision

1.     By acceptance of this Policy and **your** coverage, **you** agree, represent, and warrant that the statements and particulars made in all **your** applications, including any statements and particulars made in any and all of **your** documents, supplemental pages or other attachments ("Attachments") for the purposes of **your** application, submitted to **us** are true and correct.  It is further understood and agreed that **your** application, and any Attachments, are incorporated into, and shall form a part of, this Policy. Therefore, this Policy and any endorsements listed in **your Certificate**, and all of **your** applications and Attachments, embody all agreements between **you** and **us**, or any of **our** authorized representatives, relating to this insurance.

2.     In the event **your** application was executed or endorsed by **your** agent, **you** acknowledge that the agent has acted under **your** express authority and that **you** have thoroughly reviewed the information contained on any of **your** applications, and Attachments.   Therefore, it is understood and agreed that, to the extent permitted by law, **we** reserve the right to rescind this Policy or **your** coverage, or deny any coverage provided for a **claim**, based upon any material misrepresentation made by **you**.

3.     The representations made by **you** in **your** applications, and Attachments, are the basis for the coverage provided, as well as **our** calculation of the applicable premium.  As a result, **you** agree to inform **us** of any material change in practice.  Such material changes shall include, but are not limited to:

   a.   a new procedure being performed or expansion into a new area of patient care;
   b.   the purchase of, merger with, or construction of a new practice location, facility or real property;
   c.   any addition, deletion, or change in status (including the number of working hours, if applicable) involving a person or entity listed on **your Certificate**;
   d.   the revocation, suspension, or restriction of the professional license/certification, hospital privileges, DEA license or other legal right to practice the Insured's profession, of any Insured or employed health care provider;
   e.   a criminal indictment, charge or conviction of any Insured or employed health care provider;
   f.   a settlement or verdict in a lawsuit that was not defended by **us**; or,
   g.   any physical or mental condition that impairs any Insured's or employed health care provider's ability to render **professional services**;
   not included on **your** most recent application.

4.     In the event **we** are made aware of a material change in **your** practice, **we** reserve the right to recalculate the applicable premium, exclude the new practice characteristics from **your** coverage, and/or deny any coverage provided for a **claim** arising from, or in connection with, the material change.

P.     Service of Suit

In the event of **our** failure to pay any amount claimed to be due hereunder, **we**, at **your** request, will submit to the jurisdiction of a court of competent jurisdiction within the United States.  Nothing in this condition constitutes or should be understood to constitute a waiver of **our** rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.  It is further agreed that service of process in such **suit** may be made upon Counsel, Legal Department, The Medical

EXHIBIT A - PAGE 020

Protective Company, 5814 Reed Road, Fort Wayne, IN 46835 or **our** representative, and that in any **suit** instituted against **us** upon this Policy, **we** will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, **we** hereby designate the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successors in office, as **our** true and lawful agent upon whom may be served any lawful process in any action, suit, or proceeding instituted by **you** or on **your** behalf or any beneficiary hereunder arising out of this Policy of insurance, and hereby designates the above named agent as the person to whom the said officer is authorized to mail such process or a true copy thereof.

Q.   Cancellation, and Nonrenewal and/or Termination of Coverage

1.   **Your policy period** may be canceled by the **First Named Insured**.  The **First Named Insured** shall mail written notice to **us** requesting cancellation.  The cancellation shall be effective on the date requested by the **First Named Insured** or the date the notice is received by **us**, whichever is later.

2.   Any coverage contained within this Policy with respect to any Insured listed in **your Certificate** or identified on an endorsement as listed in **your Certificate** may be terminated by the **First Named Insured**.  The **First Named Insured** shall mail written notice to **us** requesting the coverage termination.  The termination shall be effective on the date requested by the **First Named Insured** or the date the notice is received by **us**, whichever is later.

3.   **Your policy period**, or any coverage contained therein, may also be canceled, terminated or nonrenewed by **us**.  **We** will send notice to the **First Named Insured** at the last address on record with **us**.

4.   If **we** cancel or nonrenew **your policy period** for any reason other than non-payment of premium, **we** shall provide written notice to the **First Named Insured** not less than thirty (30) days prior to the effective date of such cancellation or nonrenewal. If **we** cancel **your policy period** for nonpayment of premium, **we** shall provide written notice to the **First Named Insured** not less than ten (10) days prior to the effective date of such cancellation or nonrenewal.

5.   If **we** cancel or nonrenew the Policy for any reason other than non-payment of premium, **we** shall provide written notice to the **First Named Insured** not less than thirty (30) days prior to the effective date of such cancellation or nonrenewal.

6.   If **you** cancel or terminate **your policy period**, earned premium shall be computed in accordance with the standard short rate tables and procedure.  If **you** cancel or terminate any coverage contained therein, with respect to any Insured listed in **your Certificate** or identified on an endorsement as listed in **your Certificate**, but not the entire Policy, earned premium shall be computed pro rata. If **we** cancel **your policy period**, or terminate any coverage contained therein, earned premium shall be computed pro rata. If **we** cancel the Policy, earned premium shall be computed pro rata.  Premium adjustments shall be made within a reasonable period of time after cancellation.  However, payment or tender of unearned premium shall not be a condition of cancellation.

7.   If **we** cancel or nonrenew **your policy period**, or this Policy, **your** coverage under that **policy period** shall terminate on the earlier of:
     a.   the date stated on the cancellation or nonrenewal notice; or,
     b.   the date the Insured procures replacement coverage.

R.   Insurance Under More Than One Coverage

If more than one of this Policy's coverage applies to the same **claim** or **suit**, **we** will not pay more than the limit of insurance as stated in **your Certificate** of the coverage most applicable to the type of **claim** or **suit** which shall be determined at **our** sole discretion.

S.      Inspection and Audit

The **Company** shall be permitted, at its own discretion and for its own benefit, to audit an Insured's property, operations, and any business records.  The **Company** shall also have the right to obtain a copy of any current or prior insurance records. Any findings or recommendations made by the **Company** as a result of an audit shall inure solely to the **Company's** benefit. As a result, they may not be used as evidence of the Insured's compliance with any safety regulations or other industry standards.

T.      Modifications

Except as provided herein, this Policy may not be modified except by written endorsement attached to and made a part of this Policy by the **Company**.  The **Company's** decision not to insist on the Insured**'s** compliance with any provision of this Policy shall not operate to waive, modify, or void the provision.

U.      Arbitration.

The **Company** and the Insured agree that any dispute, **claim** or controversy arising out of, relating to, or in connection with this Policy, whether brought by or on behalf of the Insured, **Company**, or any other party, that the **Company** may elect to submit any such dispute, **claim** or controversy to binding arbitration, in accordance with Title 9 USC Sec. 1 et seq (the Federal Arbitration Act) and shall be governed by the Commercial Arbitration Rules of the American Arbitration Association.

The arbitration shall be presided over by three arbitrators chosen from the Commercial Insurance Panel of the American Arbitration Association. The arbitrators shall be governed by the law of the state of the address of the **First Named Insured**, as set forth in **your Certificate**. The arbitration shall take place in the county that the capital of that state is located.

The arbitrators shall have the discretion to order pre-arbitration discovery, including an exchange of documents and deposition of potential witnesses. Each party shall bear its own arbitration costs and expenses including attorneys' fees, unless otherwise provided by law.

Any arbitration award shall be in writing and shall specify the factual and legal bases of the award. Judgment on the award rendered by the arbitrator shall be final and may be entered in any court having jurisdiction thereof. Furthermore, this arbitration provision shall be a complete defense to any suit, action or proceeding in any federal, state or local court or before any administrative tribunal with respect to any dispute, **claim** or controversy arising out of, relating to or in connection with this Policy.

EXHIBIT A – PAGE 022

# The Medical Protective Company®
### A STOCK INSURANCE COMPANY
### 5814 Reed Road, Fort Wayne, Indiana  46835
Strength. Defense. Solutions. Since 1899.

*MULTI-SPECIALTY HEALTHCARE PROFESSIONAL*
*MASTER POLICY*
*GENERAL DEFINITIONS*

---

These General Definitions apply to the following Insuring Agreements as selected under this Policy: Multi-Specialty Healthcare Professional-Master Policy-Professional Liability and Multi-Specialty Healthcare Professional-Master Policy-Workplace Liability.

Whenever used in this Policy:

A.   **Additional Insured(s)** means any person or entity stated in Item 1(b) of **your Certificate**.

B.   **Administrative hearing(s)** means a disciplinary proceeding against an Insured arising solely out of the performance of **professional services** as a Healthcare Professional, and shall be limited to the following:

1.   Any proceeding **initiated** by a licensing authority of an Insured's jurisdiction against the Insured for unprofessional conduct;
2.   Any proceeding **initiated** by a State Department of Health Services or the Federal Department of Health and Human Services alleging that an Insured has performed **professional services** as a Healthcare Professional in excess of, or in violation of, guidelines for appropriate utilization of these services; or,
3.   Any proceeding **initiated** by a hospital or facility professional review board or committee through formally adopted, written procedures.

**Administrative hearing(s)** do not include **HIPAA Proceedings**.

C.   **Administrative hearing expense** means any reasonable expenses incurred pursuant to an **administrative hearing** for attorney's fees for legal services rendered, including but not limited to, pre-hearing discovery and investigation costs, and charges for attorney's general services.

D.   **Anti-trust law** means those laws listed in:

1.   Title 15, Section 12 of the United States Code;
2.   The Federal Trade Commission Act; or,
3.   Any similar state law.

E.   **Automobile** means a land vehicle, self-propelled or not, a trailer or a semi-trailer.  This includes any machinery or apparatus attached, whether or not subject to motor vehicle registration or designed for use principally on public roads.

F.   **Biomedical waste** means a biological agent or condition that includes, but is not limited to, an infectious organism or unsafe laboratory condition that may cause or result in **bodily injury** or **property damage**.

G.   **Bodily injury** means bodily harm, sickness or disease, including death resulting therefrom.

EXHIBIT A - PAGE 023

H.      **Certificate** means the Certificate of Insurance page, including any Schedule of Insureds, if applicable provided to an Insured which describes specific information about the Insured, including but not limited to its **policy period**, coverages selected, specialty(ies), classification(s), limits of liability, policy number, and premium amounts.

I.      **Claim** means an express, written demand upon an Insured for money or services as compensation for civil damages.

J.      **Claims expense** means all costs and expenses incurred in connection with the investigation, adjustment, and defense of any **claim**.  Such costs and expenses shall only include:

1.  attorney fees paid to the law firm selected by the **Company** to defend an Insured;
2.  court costs;
3.  expert fees;
4.  reporter fees;
5.  the cost of any alternative dispute resolution ordered by a court, otherwise required by law, or pre-approved by the **Company**;
6.  post-judgment or pre-judgment interest on that portion of the judgment that does not exceed the applicable limit of liability as stated in **your Certificate**; and,
7.  such other costs and expenses that the **Company** determines to be reasonably related to the defense of a **claim**.

K.      **Company** means the insurance company listed in **your Certificate**.

L.      **Coverage Territory** means in the United States of America, its territories or possessions, including Puerto Rico.

M.      **Criminal prosecution** means any governmental enforcement of criminal laws, including offenses or convictions, which could result in imprisonment.

N.      **Discrimination** means any violation of any law, whether statutory or common law, which prohibits disparate treatment, based upon, but not limited to, race, color, religion, national origin, age, handicap or disability, sex, or sexual orientation.

O.      **Extended reporting period** means the period of time after the cancellation or nonrenewal of **your** claims-made coverage during which the Insured may report a **claim** or **potential claim**.

P.      **Event** means an accident.  All injuries arising from:

1.  the same or related acts, errors, or omissions; or,
2.  the continuous or repeated exposure to substantially the same harmful conditions,

will be considered one **event**.  For the purposes of this definition, all injuries to a mother and fetus (or fetuses) from conception through delivery shall constitute one **event**.

Q.      **First discovered** means the date an Insured first knew, or reasonably should have known, of a **potential claim**.

R.      **First Named Insured** means the entity or person listed first as a **Named Insured** in **your Certificate**.

S.      **First made** means the date on which an Insured first received a **claim**.  All **claims** arising from loss suffered by the same claimant(s) shall be considered as having been **first made** when the first such **claim** is received by an Insured.

T.  **Good Samaritan act** means rendering of, or failure to render, **professional services** during an unforeseen emergency for which no fee is expected, demanded or received resulting in **bodily injury** and any resulting **property damage**.

U.  **HIPAA proceeding** means any federal proceeding alleging any breach of the responsibilities, obligations or duties imposed upon **you** under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and any rules or regulations promulgated thereunder.

V.  **HIPPA proceeding expenses** mean any reasonable expenses incurred pursuant to a **HIPPA proceeding** for attorney's fees for legal services rendered, including but not limited to, pre-hearing discovery and investigation costs, and charges for attorney's general services.

W.  **Initiated** means the commencement of an **administrative hearing** at the time written notice is received by an Insured.

X.  **Master Policyholder** means the entity listed on the Master Policy Declarations Page under the "Master Policyholder" section. The **Master Policyholder** is not an Insured under the Master Policy nor under any **Certificates**.

Y.  **Named Insured** means the person or entity designated in Item 1(a) of **your Certificate**.

Z.  **Non-standard policy** means a policy issued by a market of last resort, where coverage is typically limited or restricted due to prior claims or other specific risk issues identified as part of a risk profile.

AA.  **Patient** means an individual who is undergoing medical **treatment** and care that is directed by a certified/licensed practitioner of the healing arts, as required by law, toward maintenance, improvement or protection of health or lessening of illness, disability or pain.

BB.  **Peer review** means the evaluation of a Healthcare Professional's fitness and qualification to provide **treatment** by a professional review board or committee through formally adopted, written procedures.

CC.  **Personal injury** means injury, other than **bodily injury**, arising out of one or more of the following offenses:

1.  False arrest, detention or imprisonment;
2.  Malicious prosecution;
3.  Wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;
4.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or,
5.  Oral or written publication of material that violates a person's right of privacy.

DD.  **Policy period** means the period commencing on the effective date shown in **your Certificate**. This period ends on the earlier of the expiration date shown in **your Certificate** or the effective date of cancellation of **your policy period**.  If an Insured becomes an Insured under this Policy after the effective date, the **policy period** begins on the date they became an Insured.

EE.  **Pollutants** means any solid, liquid, gaseous, or thermal irritant or contaminant including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, asbestos, asbestos containing materials, lead, lead containing materials and waste.  Waste includes, but is not limited to, **biomedical waste**, nuclear waste, and materials to be recycled, reconditioned, or reclaimed.

FF.      **Potential claim** means an incident which an Insured knows or reasonably should know is likely to result in a **claim**.

GG.      **Premises liability** means **bodily injury** or **property damage** occurring on premises an Insured uses for **professional services**.

HH.      **Professional services** means  **peer review** and medical **treatment** for those specialties listed in **your Certificate** or any other services listed by endorsement, for which an Insured is licensed as required by law, trained, and qualified to perform in the Insured's capacity as a Healthcare Professional.  **Professional services** include services as an educator or as a member of a formal accreditation, standards review, or similar professional board or committee, including as a director or officer of such board or committee.

II.      **Property damage** means:

1. Physical injury to, or destruction of, tangible property; or,
2. Loss of use of tangible property, which has not been physically injured or destroyed.

All such **property damage** shall be deemed to occur at the time of the **event** causing said **property damage**.

JJ.      **Retroactive date** means the date prior to which an Insured has no coverage under the applicable Insuring Agreement.  The **retroactive date** is listed in **your Certificate** for each Insured to which a **retroactive date** applies.

KK.      **Suit** means a civil proceeding in a court, and includes an arbitration proceeding.

LL.      **Totally disabled** means **you** are:

1. Permanently, wholly, and continuously disabled and thereby prevented from performing any and all duties pertaining to the practice of medicine; and,
2. Under the regular care and attendance of a legally qualified physician.

MM.      **Treatment** means:

1. The rendering of medical, surgical, dental, or nursing services to a **patient**;
2. The provision of medical examinations, opinions, or consultations regarding a person's medical condition within an Insured's practice as a certified/licensed health care provider, as required by law; or,
3. The furnishing of any of the following, but only as it relates to the rendering of medical, surgical, dental, or nursing services to a **patient**:
   a. counseling and social service;
   b. food and beverages; or,
   c. medical, surgical, or dental supplies, appliances, or drugs.

NN.      **Utilization review** means the review of the necessity, appropriateness, cost, type or utilization of healthcare services made without **patient** contact.

OO.      **We**, **us**, and **our,** refer to the **Company**.

PP.      **Wrongful act** means rendering of, or failure to render, **professional services** that results in injury.

QQ.      **You** and **your** means the **Named Insured(s)** stated in Item 1(a) of **your Certificate** or identified on an endorsement as listed in **your Certificate**.

EXHIBIT A – PAGE 026

# The Medical Protective Company®

**A STOCK INSURANCE COMPANY**
**5814 Reed Road, Fort Wayne, Indiana  46835**
Strength. Defense. Solutions. Since 1899.

*MULTI-SPECIALTY HEALTHCARE PROFESSIONAL*
*MASTER POLICY*
*GENERAL EXCLUSIONS*

These General Exclusions apply to the following Insuring Agreements as selected under this Policy: Multi-Specialty Healthcare Professional-Master Policy-Professional Liability and Multi-Specialty Healthcare Professional-Master Policy-Workplace Liability.

*I.  EXCLUSIONS*

This Policy shall not apply to any **claim** or **suit** based upon an **event**:

A.    Arising out of an Insured's dishonest, fraudulent, criminal or malicious act, error or omission.

B.    Arising out of an Insured's ownership or operation of a hospital, clinic, or other facility or institution, which provides overnight bed and board; or an Insured's ownership, or other business enterprise not named as an Insured in **your Certificate**.

C.    Arising out of disputes about an Insured's fees, including collecting fees from third parties.

D.    Arising out of any Insured's **wrongful act** as a manager, administrator or as director/officer or committee member of a **utilization review** panel.  However, this exclusion does not apply to **your wrongful acts** in **your** capacity as a member of a formal accreditation or review board, professional society or licensing board.

E.    Arising out of any dispute between two or more Insureds under the same **Certificate**.

F.    Arising out of allegations of **discrimination**.

G.    Arising out of any act an Insured reasonably expected or intended to cause injury or damage, regardless of whether the Insured expected or intended the specific injury or damage resulting from the Insured's act.  However, this exclusion does not apply to a **claim** or **suit** for a **good samaritan act**.

H.    Arising out of **bodily injury** or **property damage** in any way involving an Insured's ownership or use of an **automobile**, watercraft or aircraft.

I.    Arising out of injury or damage to:

1.  Employee(s) or independent contractor(s) working for an Insured; or,
2.  The spouse or relative of such employee(s) or independent contractor(s), as a consequence of injury or damage to the employee(s) or independent contractor(s).
    a.  This exclusion applies:

        i.   whether an Insured is liable as an employer or in any other capacity; or,
        ii.  to any obligation to share damages with or repay someone else who must pay damages because of the injury or damage.

18522                                        1 of 4                              08/13

EXHIBIT A - PAGE 027

J.      Arising out of any obligation under a workers' compensation, occupational disease, employer's liability, disability benefits, unemployment compensation, or any similar law.

K.      Arising out of an Insured's liability that is covered or insurable under a directors and officers, errors and omissions or employment practice liability insurance policy.

L.      Arising out of **property damage** to:

1. Property an Insured owns, rents, occupies or uses;
2. Property in an Insured's care, custody or control; or,
3. Premises an Insured has sold, given away or abandoned.

**We** shall, however, pay up to $1,000 as part of, and not in addition to, the **event** limit as stated in **your Certificate,** for **property damage** to personal property of others in **your** care, custody or control while performing **your professional services** as a Healthcare Professional.  Unless otherwise specified in the Policy, **we** shall not pay **for property damage** to personal property of an Insured.

M.      Arising out of any business relationship outside of an Insured's provision of **professional services** to any past or present **patient** or client.

N.      Arising out of liability assumed under any contract or agreement.  However, this exclusion does not apply to liability:

1. An Insured would have in the absence of the contract or agreement; or,
2. An Insured assumed in a written contract or written agreement with:
   a. a Health Maintenance Organization;
   b. a Preferred Provider Organization;
   c. a Independent Practice Association; or,
   d. any other similar organization;

but only for vicarious liability based solely on an Insured's **professional services** rendered, or which should have been rendered by **you** or any person for whose acts or omissions an Insured is legally responsible.

O.      Arising out of any **wrongful act** for any **professional services** for which an Insured did not have authorization to provide such services due to suspension, revocation, surrender, restriction of, or failure to obtain the proper professional license, certification or authorization required by law in the state or locality at the time of providing **professional services**.

P.      Arising out of any **wrongful act** while an Insured was in any manner, extent or degree impaired by or under the influence of alcohol, narcotics, hallucinogenic agents, drugs or intoxicants of any nature or kind.

Q.      Arising out of any Insured's **wrongful act** in violation of applicable law regulating or governing the Insured's **professional services.**

R.      Arising out of:

1. The actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **pollutants**;
2. Any direction, request, demand, order or statutory or regulatory requirement to test for, monitor, investigate, cleanup, remove, contain, treat, detoxify, or neutralize **pollutants** or in any way respond to or assess the effects of **pollutants**; or,
3. Any cost, charge, expense or request for reimbursement arising out of 1. or 2. above.

EXHIBIT A - PAGE 028

S.     For fines, penalties, punitive, exemplary or multiplied damages.  If permitted by law, however, **we** shall pay up to $25,000 in punitive, exemplary or multiplied damages as part of, and not in addition to, the Limits of Insurance as stated in **your Certificate**.

T.     Arising out of an Insured's administration of anesthesia other than the administration of nitrous oxide, topical anesthetic, or local anesthesia injection, unless under the direct supervision of the supervising physician or nurse anesthetist and, where permitted by law.

U.     Arising out of an Insured's performance of any **professional services**, business, or profession other than those listed in **your Certificate** or by endorsement.

V.     Arising out of an Insured's **professional services** to animals.

W.     Any **claim** or **potential claim** arising from, or in connection with, any cyber or privacy insurance coverage, including but not limited to, any coverage for network security and privacy, regulatory fines and penalties, patient notification and credit monitoring, or data recovery cost.

X.     Any fabrication, alteration or destruction, in whole or in part, of any medical record pertaining to the person whose **treatment** is the subject of the **claim** or **potential claim**, including, but not limited to, any medical or business record pertaining to the condition, **treatment** and/or consent of such person to any **professional service**, in whole or in part, by or at the direction of an Insured, after the happening of the activity reflected in such document or record.  However, this exclusion does not apply to bona fide corrections to records made in accordance with applicable generally accepted professional standards, but this exception only applies if such corrections are identified as such, dated and signed by the person making them.

Y.     Arising out of any liability from a defective good or product invented, designed, manufactured, or sold by Insured.  However, this exclusion shall not apply to liability arising from a good or product which was specifically used by Insured to provide **professional services** to a **patient**.

Z.     Arising out of any **potential claim** or **claim** that was **first discovered** by any Insured prior to **your policy period**.  This shall include, but is not limited to, any **claim** or **potential claim** listed or referenced on any application, loss run, or any information previously submitted to the **Company** or reported to another prior insurance carrier.

AA.     Arising out of any request for damages:

1. For which an Insured has coverage under a nuclear energy liability policy issued by the:
   a.  Nuclear Energy Liability Insurance Association;
   b.  Mutual Atomic Energy Liability Underwriters;
   c.  Nuclear Insurance Association of Canada; or,
   d.  any successor or assignee of the entities listed in AA.1.a. b. or c., above.

This Policy also does not apply if such coverage did exist, but was terminated by the exhaustion of an Insured's limit of insurance under a nuclear energy liability policy.

2. Resulting from the hazardous properties of nuclear material for which an Insured:
   a.  was required to maintain financial protection under the Atomic Energy Act of 1954 or any amendment or regulation that applies thereto; or,
   b.  was entitled to indemnity by the United States government or any agency thereof or would have been entitled to had this Policy not been issued.

BB.     Arising out of **wrongful acts** due to war, whether or not declared, or any act or condition incidental to war.  War includes civil war, insurrection, rebellion, revolution, or terrorism.

EXHIBIT A - PAGE 029

CC.    Arising out of an Insured's actual or alleged involvement in:

    1.    **Anti-trust law** violation; or,
    2.    Agreement of conspiracy to restrain trade.

DD.    Arising out of, or in connection with, an Insured's violation of the Americans with Disabilities Act.

EE.    Arising out of an Insured's actual or alleged sexual misconduct or inappropriate physical contact, or attempt thereat or proposal thereof by an Insured or any other person for whom the Insured may be liable. The **Company** will, however, provide a defense to **you** for such allegations, subject to Section III. Sexual Misconduct Provision, and subject to the Aggregate Sexual Misconduct Expense Limit as stated in **your Certificate**.

## The Medical Protective Company®
**A STOCK INSURANCE COMPANY**
**5814 Reed Road, Fort Wayne, Indiana  46835**
Strength. Defense. Solutions. Since 1899.

### *MULTI-SPECIALTY HEALTHCARE PROFESSIONAL*
### *MASTER POLICY*
### *PROCEDURES EXCLUSION ENDORSEMENT*

In consideration of a modification of premium, if any, it is understood and agreed:

The following exclusions are added to the *General Exclusions:*

> Arising out of an Insured's performance of any **professional services** in **your** capacity as a certified nurse midwife or nurse-midwife.

> Any **claim** or **potential claim** arising from, or in connection with home deliveries.

All other terms and conditions of the Policy remain unchanged.

08/13

# The Medical Protective Company®
**A STOCK INSURANCE COMPANY**
**5814 Reed Road, Fort Wayne, Indiana  46835**
Strength. Defense. Solutions. Since 1899.

*MULTI-SPECIALTY HEALTHCARE PROFESSIONAL*
*MASTER POLICY*
*PROFESSIONAL LIABILITY INSURING AGREEMENT*
*OCCURRENCE*

Throughout this Insuring Agreement the words **you** and **your**, refer to the **Named Insured(s)** designated in item 1(a) of **your Certificate**. The words **we**, **us** and **our**, refer to the **Company** providing this insurance.

In consideration of the payment of the premium due, and in reliance upon the representations in **your** Application, **you** and **we** agree as follows, subject to the terms and conditions of this Policy, including **your** applicable Limits of Insurance:

## I.    COVERAGES

A.    Professional Liability

**We** shall pay those amounts an Insured is legally obligated to pay to compensate others for damages resulting from an **event** based upon a **wrongful act**.  The **wrongful act** must take place during **your policy period**.

B.    Good Samaritan Acts

**We** shall pay for those amounts an Insured is legally obligated to pay to compensate others for damages resulting from an **event** based upon a **good samaritan act**.  The **good samaritan act** must take place during **your policy period**.

C.    Assault or Battery Upon **You**

**We** shall pay for expenses **you** incur for **your bodily injury** and **your property damage** resulting from an assault or battery upon **you** while performing **your professional services** as a Healthcare Professional.  The assault or battery must take place during **your policy period**.

D.    First Aid By **You**

**We** shall pay for expenses **you** incur for first aid rendered to a person other than **your patient** as a result of **bodily injury**.  The first aid must be provided during **your policy period**, and within forty-eight (48) hours after the **bodily injury** occurs.

E.    Medical Payments to Others

**We** will pay up to the Per Person Medical Payments Limit stated in **your Certificate** for necessary medical expenses, regardless of fault, incurred within three (3) years from the date of an **event** causing **bodily injury** to **your patient** that occurs on premises, and on ways immediately adjoining the premises, **you** principally use for **your professional services** as a Healthcare Professional.  The **event** must take place during **your policy period**.  Any **claim** for medical expenses must be first reported by **you** to **us** in writing within one (1) year of the date of

EXHIBIT A – PAGE 032

the **event**.  **Our** obligation to pay medical expenses is contingent upon the injured person submitting to examination, at **our** expense, by a physician(s) of **our** choice, as often as **we** reasonably require.  In no event shall the amount payable hereunder exceed the Aggregate Medical Payment Limit stated in **your Certificate** per **policy period**.

F.      Deposition Fees and Expenses When **You** Are Not a Named Party to a **Suit**

  **We** shall pay those reasonable fees, costs and expenses necessary to represent **you** at a deposition involving a **wrongful act** where **you** are not a named party to the **suit**.  The **wrongful act** must take place during **your policy period**.

---

**II.      ADMINISTRATIVE HEARING PROVISION**

---

A.      **We** have the right and duty to defend an Insured in any **administrative hearing**, and shall pay any necessary **administrative hearing expenses**, regardless if the basis for that **administrative hearing** is groundless, false, or fraudulent.  However, the defense of an Insured in any **administrative hearing** must arise from **your professional services** to a **patient** which would otherwise be covered under this Insuring Agreement and for which there is no other insurance available, and that takes place during **your policy period.**

B.      Each **Administrative Hearing Expense** Limit shall be the amount stated in **your Certificate**. **Our** duty to defend an **administrative hearing** shall cease when the limit is exhausted.  The maximum amount of **administrative hearing expenses** for **administrative hearings** shall be the Aggregate **Administrative Hearing Expense** Limit stated in **your Certificate**.    All **administrative hearings** arising from the same series of continuous, related, or repeated allegations shall be considered arising out of one hearing.

  Upon the exhaustion of the applicable limit provided under this Insuring Agreement, the Insured shall become responsible for all further **claims expense** arising from the proceeding.  If the Insured cannot come to an agreement with the attorney assigned by the **Company** regarding the payment of future fees and costs, the Insured shall take all steps necessary to allow the attorney to withdraw from the matter.

C.      **We** shall not pay for **administrative hearing expenses** arising out of:

1.  Any defense of **criminal prosecution**;
2.  Any circumstance of which **you** were aware or which **you** reasonably believed, would result in an **administrative hearing** prior to **your policy period**;
3.  Any legal matter other than an **administrative hearing**;
4.  Any application for initial placement on a medical staff;
5.  Any costs an Insured incurs, including but not limited to, loss of earnings, with regard to an **administrative hearing**, unless it is a cost that **we** specifically ask an Insured to incur;
6.  Any defense of fraud or willful non-compliance  involving Medicare/Medicaid billing or any other insurance reimbursement regulations or procedures once it becomes reasonably apparent to the **Company** that an Insured committed a fraudulent or willful non-compliant act;
7.  Any legal action commenced by **you** including, but not limited to, an **administrative hearing**;
8.  Fines, penalties, punitive, exemplary, or multiplied damages; or,
9.  Any **administrative hearing** arising out an Insured's capacity as a manager, administrator, director, officer, or committee member of a **utilization review** panel.  This exclusion shall not apply to **your** capacity as a member of a formal accreditation or review board, professional society, or licensing board.

D.    Appeals

All **administrative hearing expenses** incurred with respect to appeals and proceedings, or a series of continuous or interrelated appeals and proceedings, arising out of an **administrative hearing** shall be considered as part of the original **administrative hearing**. Payments for all such **administrative expenses** shall not exceed the **Administrative Hearing Expense** Limit stated in **your Certificate**.

E.    Representation at an **Administrative Hearing**

1.    **We** shall pay **administrative hearing expenses** in excess of any other coverage, no matter how those coverages are described, up to the **Administrative Hearing Expense** Limit stated in **your Certificate**.
2.    **We** shall have the right to select any attorney to represent an Insured in the defense of an **administrative hearing**.

F.    Action for Defamation and Other Allegations

**We** shall pay for **administrative hearing expenses** arising out of an **administrative hearing** where **bodily injury**, **property damage**, defamation, libel, slander, emotional distress, assault and battery, or matters which may be deemed uninsurable by the law are alleged, notwithstanding any exclusion to the contrary, but only if in final adjudication such allegations are found to be false or unfounded. If an Insured is found liable for any of these allegations, **you** shall reimburse **us** for all **administrative hearing expenses** arising out of that **administrative hearing**.

---

**III.    SEXUAL AND PHYSICAL MISCONDUCT PROVISION**

---

A.    **We** shall provide **you** with a defense, not to exceed the Aggregate Sexual and Physical Misconduct Expense Limit stated in **your Certificate**, for all **claims**, **potential claims** and **suits** involving any actual or alleged sexual misconduct or inappropriate physical contact, or attempt, threat or proposal thereof, based upon **professional services** that take place during **your policy period**:

1.    by any Insured or any other person for whom **you** may be legally liable; and,
2.    with, or to, any former or current **patient** of an Insured, or with, or to, any relative or member of the same household as any **patient**, or with, or to, any person with whom the **patient** or relative has a personal relationship.

B.    **We** shall not be obligated to undertake, nor continue to defend, any **claim**, **potential claim**, or **suit** after the Aggregate Sexual and Physical Misconduct Expense Limit stated in **your Certificate** is exhausted. The **Company** has no duty to pay any damages for any **potential claim**, **claim** or **suit** involving any actual or alleged sexual misconduct or inappropriate physical contact, or attempt threat or proposal thereof, based upon **professional services**.

---

**IV.    DEFENSE COSTS, CHARGES, AND EXPENSES**

---

A.    **We** have the right and duty to defend any Insured at **our** expense, and in addition to the Limits of Insurance stated in **your Certificate**, for any **suit** brought against any Insured for a **claim**, even if the **suit** is groundless or fraudulent. **Our** duty to defend any **suit** ends after the applicable Limit of Insurance stated in **your Certificate** is exhausted by payment of judgments, awards, settlements and interest accruing thereon prior to entry of a judgment, issuance of an award or settlement.

EXHIBIT A – PAGE 034

**We** have the right to investigate any **claim**, **potential claim** or **suit**. **We** have the right to settle any **claim** or **suit**. **We** will not, however, settle any **claim** or **suit** against **you**, if **you** are an individual, without **your** prior written consent.

**We** shall have the right to settle any **claim** or **suit** filed against any partnership, corporation or **Additional Insured(s)** as **we** deem expedient. **We** shall not, however, settle any **claim** or **suit** filed against a partnership or corporation or **Additional Insured(s)** without prior notice to the **First Named Insured**.

B.    **We** shall pay, with respect to any **claim** or **suit we** defend:

1. All attorneys' fees paid to the law firm selected by **us** to defend any Insured;
2. All expenses **we** incur;
3. All costs taxed against any Insured in the **suit**;
4. Post-judgment interest on that portion of a judgment that is within the applicable Limit of Insurance stated in **your Certificate**;
5. All reasonable expenses incurred by an Insured at **our** request to assist **us** in the investigation or defense of the **claim**, **potential claim** or **suit**. **We** shall also pay up to the Limit of Insurance stated in **your Certificate** for loss of earnings, if **you** are away from **your** employment as a Healthcare Professional at **our** request to help **us** defend a **suit**; and,
6. Premiums for appeal bonds, or bonds to release property used to secure a legal obligation, if required in a **suit we** defend. **We** shall only pay, however, for bonds valued up to the applicable Limit of Insurance stated in **your Certificate**. **We** have no obligation to appeal a **suit we** defend or to obtain these bonds.

These payments shall be in addition to, and shall not reduce the Limits of Insurance stated in **your Certificate**.

---

## V.    HIPAA PROCEEDINGS

---

**We** will pay up to the Each **HIPAA Proceeding Expense** Limit stated in **your Certificate** for **your** expenses from the investigation or defense of a **HIPAA Proceeding**. However, if in final adjudication **you** are found to be liable for an intentional violation, **you** shall reimburse **us** for all **HIPAA Proceeding Expenses**. In no event shall the amount payable hereunder exceed the Aggregate **HIPAA Proceeding Expense** Limit stated in **your Certificate** per **policy period** regardless of the number of Insured**s** or the number of **HIPAA Proceedings**.

A **HIPAA Proceeding** must begin during **your policy period** or within one year after the expiration date of **your policy period** and must be reported to **us** within thirty (30) days after **you** receive notice of a **HIPAA Proceeding**.

---

## VI.    WHO IS AN INSURED

---

A.    The unqualified word Insured used in this Policy means:

1. **You**;
2. If **You**, as designated in Item 1(a) of **your Certificate** is an individual, then **your** spouse is also an Insured, but only with respect to the conduct of **your professional services**;
3. If **You**, as designated in Item 1(a) of **your Certificate** is a partnership or corporation, then **your** partners, executive officers, directors, or stockholders are also Insureds, but only with respect to the conduct of **your professional services**;

4. Any individual, partnership or corporation designated in Item 1(b) of **your Certificate** is an **Additional Insured**, but only for the **Additional Insured's** vicarious liability based solely on **professional services** rendered, or which should have been rendered by **you** or any person for whose acts or omissions **you** are legally responsible;

5. If **You**, as designated in Item 1(a) of **your Certificate**, is a student Healthcare Professional then **you** are an Insured, but only with respect to the conduct of providing **professional services** for the school in which **you** are enrolled and for which **you** are under the supervision of an accredited or licensed training program; and,

6. Any other Insured(s) identified in **your Certificate** or identified on an endorsement as listed in **your Certificate**.

---

## VII.   LIMITS OF INSURANCE

A.  The Limits of Insurance stated in **your Certificate** and the information contained in this section identifies the most **we** will pay regardless of the number of:

1. Insureds; or
2. Claimants, **potential claims**, **claims** or **suits** brought against an Insured.

B.  The Each **Event** Limit stated in **your Certificate** for a specific coverage(s), if applicable, is the most **we** shall pay for a single **event** for that specific coverage(s).  The Each **Event** Limit(s) shall apply:

1. Separately to each individual or partnership, association, corporation or other entity specifically designated in Item 1(a) as a **Named Insured** in **your Certificate**; and
2. As a shared limit for the individual or partnership, association, corporation, or other entity specifically designated in Item 1(b) as an **Additional Insured in your Certificate**, and for any other Insureds.

C.  The Aggregate Limit stated in **your Certificate** for a specific coverage(s), if applicable, is the most **we** shall pay for that specific coverage(s).  The Aggregate Limit(s) shall apply:

1. To each **policy period**;
2. Separately to each individual or partnership, association, corporation or other entity specifically designated in Item 1(a) as a **Named Insured** in **your Certificate**; and
3. As a shared limit for the individual or partnership, association, corporation, or other entity specifically designated in Item 1(b) as an **Additional Insured in your Certificate** and for any other Insureds.

EXHIBIT A – PAGE 036

# The Medical Protective Company®
**A STOCK INSURANCE COMPANY**
**5814 Reed Road, Fort Wayne, Indiana  46835**
Strength. Defense. Solutions. Since 1899.

*MULTI-SPECIALTY HEALTHCARE PROFESSIONAL*
*MASTER POLICY*
*REUSE OR MULTIDOSE SUPPLY PROCEDURE EXCLUSION ENDORSEMENT*

In consideration of a modification or premium, if any, and as identified by this endorsement number in **your Certificate** or as listed in the Modified Coverage column on the Schedule of Insureds, if applicable, it is understood and agreed:

The following exclusion is added the *General Exclusions*:

Arising out of an Insured's **wrongful act** reusing the same needle or syringe when administering intravenous medications or reuse of any parenteral device or supply into a multidose vial, port or intravenous solution for more than a single patient.  However, **we** shall provide **you**, or any other person for whom **you** may be legally liable, with a defense, not to exceed an Aggregate Expense Limit of $25,000, for all **claims**, **potential claims** and **suits** involving any reuse of the same needle or syringe when administering intravenous medications or reuse of any parenteral device or supply into a multidose vial or intravenous solution for more than a single patient.   **We** shall not be obligated to undertake, nor continue to defend, any **claim**, **potential claim**, or **suit** after the Aggregate Expense Limit of $25,000 is exhausted.  The **Company** has no duty to pay any damages for any **potential claim**, **claim** or **suit** involving any reuse of the same needle or syringe when administering intravenous medications or reuse of any parenteral device or supply into a multidose vial or intravenous solution for more than a single patient.

The **Company's** duty to defend any Insured for such a **claim** or **potential claim** will cease if the **Company's** investigation of the facts makes it reasonably apparent to the **Company**, or it is established by judgment, that an Insured reasonably expected or intended to cause injury or damage, regardless of whether the Insured expected or intended the specific injury or damage sustained, by reusing the same needle or syringe when administering intravenous medications or reuse of any parenteral device or supply into a multidose vial or intravenous solution for more than a single patient.

All other terms and conditions of the Policy remain unchanged.

19218                                                                                        08/13

# The Medical Protective Company®

**A STOCK INSURANCE COMPANY**
**5814 Reed Road, Fort Wayne, Indiana  46835**
Strength. Defense. Solutions. Since 1899.

*MULTI-SPECIALTY HEALTHCARE PROFESSIONAL*
*MASTER POLICY*
*WORKPLACE LIABILITY INSURING AGREEMENT*
*OCCURRENCE*

Throughout this Insuring Agreement the words **you** and **your**, refer to the **Named Insured(s)** designated in item 1(a) of **your Certificate**. The words **we**, **us** and **our**, refer to the **Company** providing this insurance.

In consideration of the payment of the premium due, and in reliance upon the representations in **your** Application, **you** and **we** agree as follows, subject to the terms and conditions of this Policy, including **your** applicable Limits of Insurance:

## I.      COVERAGES

A.      Healthcare Professional Premises Liability

**We** shall pay those amounts an Insured is legally obligated to pay to compensate **patients** for any **premises liability** resulting from an **event** arising solely out of **professional services**. The **premises liability** must take place during **your policy period**.

B.      **Personal Injury** Liability

**We** shall pay those amounts an Insured is legally obligated to pay to compensate someone other than **your patient** for any **personal injury** resulting from an **event** arising solely out of **your professional services**.  The **personal injury** must take during **your policy period**.

## II.     DEFENSE COSTS, CHARGES, AND EXPENSES

A.      **We** have the right and duty to defend any Insured at **our** expense, and in addition to the Limits of Insurance stated in **your Certificate**, any **suit** brought against any Insured for a **claim**, even if the **suit** is groundless or fraudulent.  **Our** duty to defend any **suit** ends after the applicable Limit of Insurance stated in **your Certificate** has been exhausted by payment of judgments, awards, settlements and interest accruing thereon prior to entry of a judgment, issuance of an award or settlement.

**We** have the right to investigate any **claim**, **potential claim** or **suit**.  **We** have the right to settle any **claim** or **suit**.  **We** will not, however, settle any **claim** or **suit** against **you**, if **you** are an individual, without **your** prior written consent.

**We** shall have the right to settle any **claim**, or **suit** filed against any partnership, corporation or **Additional Insured** as **we** deem expedient.  **We** shall not, however, settle any **claim** or **suit** filed against a partnership or corporation or **Additional Insured** without prior notice to the **First Named Insured**.

B.   **We** shall pay, with respect to any **claim**, or **suit we** defend:

1. All attorneys' fees paid to the law firm selected by **us** to defend any Insured;
2. All expenses **we** incur;
3. All costs taxed against any Insured in the **suit**;
4. Post-judgment interest on that portion of a covered judgment that is within the applicable Limit of Insurance stated in **your Certificate**;
5. All reasonable expenses incurred by an Insured at **our** request to assist **us** in the investigation or defense of the **claim**, **potential claim** or **suit**. **We** shall also pay up to the Limit of Insurance stated in **your Certificate** for loss of earnings, if **you** are away from **your** employment as a Healthcare Professional at **our** request to help **us** defend a **suit**; and,
6. Premiums for appeal bonds, or bonds to release property used to secure a legal obligation, if required in a **suit we** defend.  **We** shall only pay, however, for bonds valued up to the applicable Limit of Insurance stated in **your Certificate**.  **We** have no obligation to appeal a **suit we** defend or to obtain these bonds.

These payments shall be in addition to, and shall not reduce the Limits of Insurance stated in **your Certificate**.

## III.   WHO IS AN INSURED

A.   The unqualified word "Insured" used in this Policy means:

1. **You**;
2. If **You**, as designated in Item 1(a) of **your Certificate** is an individual, then **your** spouse is also an Insured, but only with respect to the conduct of **your professional services**;
3. If **You**, as designated in Item 1(a) of **your Certificate** is a partnership or corporation, then **your** partners, executive officers, directors, or stockholders are also Insureds, but only with respect to the conduct of **your professional services**;
4. Any individual, partnership or corporation designated in Item 1(b) of **your Certificate** is an **Additional Insured**, but only for the **Additional Insured's** vicarious liability based solely on **professional services** rendered, or which should have been rendered by **you** or any person for whose acts or omissions **you** are legally responsible;
5. If **You**, as designated in Item 1(a) of **your Certificate**, is a student Healthcare Professional then **you** are an Insured, but only with respect to the conduct of providing professional  services for the school in which **you** are enrolled and for which **you** are under the supervision of an accredited or licensed training program; and,
6. Any other Insured identified in **your Certificate** or identified in an endorsement as listed in **your Certificate**.

## IV.   LIMITS OF INSURANCE

A.   The Limits of Insurance stated in **your Certificate** and the information contained in this section identifies the most **we** will pay regardless of the number of:

1. Insureds;
2. Claimants, **potential claims**, **claims** or **suits** brought against an Insured.

B.   The Each **Event** Limit stated in **your Certificate** for a specific coverage(s), if applicable, is the most **we** shall pay for a single **event** for that specific coverage(s).  The Each **Event** Limit(s) shall apply:

EXHIBIT A – PAGE 039

      1. Separately to each individual or partnership, association, corporation or other entity specifically designated in Item 1(a) as a **Named Insured** in **your Certificate**; and

      2. As a shared limit for the individual or partnership, association, corporation, or other entity specifically designated in Item 1(b) as an **Additional Insured** in **your Certificate** and for any other Insureds;

C.     The Aggregate Limit stated in **your Certificate** for a specific coverage(s), if applicable, is the most **we** shall pay for that specific coverage(s).  The Aggregate Limit(s) shall apply:

      1. To each **policy period**;

      2. Separately to each individual or partnership, association, corporation or other entity specifically designated in Item 1(a) as a **Named Insured** in **your Certificate**; and

      3. As a shared limit for the individual or partnership, association, corporation, or other entity specifically designated in Item 1(b) as an **Additional Insured** in **your Certificate** and for any other Insureds.

Filing # 190372672 E-Filed 01/23/2024 04:23:41 PM



**IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA**

**TAYLOR STEPHANOS,**                                   **CASE NO.: 50-2023-CA-011495 (AJ)**

      **Plaintiff,**

**vs.**

**JILLIAN PIERCE, DOMINIQUE CLEARY
EVANS, DONNA SHUMAN-FEINBERG,
AQUA LASER STUDIO INC., HOLLY
HENNINGSON, and CANDELA
CORPORATION,**

      **Defendants.**

_____/

### <u>AMENDED COMPLAINT</u>

    Plaintiff, **TAYLOR STEPHANOS**, sues Defendants, **JILLIAN PIERCE, DOMINIQUE CLEARY EVANS, DONNA SHUMAN-FEINBERG, AQUA LASER STUDIO INC., HOLLY HENNINGSON, and CANDELA CORPORATION** and alleges:

    1.    This is an action for damages in excess of Fifty Thousand Dollars ($50,000.00), exclusive of interest and costs.

    2.    Venue is proper in Palm Beach County, Florida because the incident, which is the subject of this complaint, occurred in Palm Beach County, Florida.

    3.    At all times material hereto, Plaintiff, **TAYLOR STEPHANOS**, was a resident of Palm Beach County, Florida, over the age of 18, and sui juris.

    4.    At all times material hereto, Defendant, **DONNA SHUMAN-FEINBERG**, was a resident of Palm Beach County, Florida, over the age of 18, and sui juris.

    5.    At all times material hereto, Defendant, **DONNA SHUMAN-FEINBERG**, is also known as a **"DONNA FEINBERG", "DONNA M FEINBERG", "DONNA M SHUMAN-FEINBERG"** and **"DONNA SHUMAN FEINBERG"** and all are collectively referred to as **"SHUMAN-FEINBERG".**

6.     At all times material hereto, Defendant, **JILLIAN PIERCE**, was a resident of Palm Beach County, Florida, over the age of 18, and sui juris.

7.     At all times material hereto, Defendant, **JILLIAN PIERCE**, was a licensed facial specialist with license # FB9768136.

8.     At all times material hereto, Defendant, **DOMINIQUE CLEARY EVANS**, was a resident of Palm Beach County, Florida, over the age of 18, and sui juris.

9.     At all times material hereto, Defendant, **DOMINIQUE CLEARY EVANS**, was a licensed facial specialist with license # FB9744994.

10.    At all times material hereto, Defendant, **SHUMAN-FEINBERG**, was a resident of Palm Beach County, Florida, over the age of 18, and sui juris.  Alternatively, the Defendant has either left the state of Florida or is concealing her whereabouts.

11.    At all times material hereto, Defendant, **AQUA LASER STUDIO INC.**, was a Florida corporation with its principal place of doing business located in Palm Beach County, Florida.  Alternatively, the Defendant's Registered Agent, DONNA SHUMAN-FEINBERG, has either left the state of Florida or is concealing her whereabouts.

12.    At all times material hereto, Plaintiff, **TAYLOR STEPHANOS**, and Defendants, **JILLIAN PIERCE** and **DOMINIQUE CLEARY EVANS**, were employees of **AQUA LASER STUDIO INC.**

13.    At all times material hereto, Defendant **DONNA SHUMAN** was an owner of **AQUA LASER STUDIO INC.**

14.    At all times material hereto, Defendant, **HOLLY HENNINGSON**, was a resident of Miami-Dade County, Florida, over the age of 18, and sui juris.

15.    At all times material hereto, Defendant, **HOLLY HENNINGSON**, was a licensed facial specialist with license # FB9719616.

16.    At all times material hereto, Defendant, **CANDELA CORPORATION**, was a foreign corporation with its principal place of doing business located in Middlesex County, Massachusetts.

17.    At all times material hereto, Defendant **HOLLY HENNINGSON** was an employee of **CANDELA CORPORATION**.

18.     At all times material hereto, Defendant **SHUMAN-FEINBERG** operated **AQUA LASER STUDIO INC.** with the purpose of providing cosmetic services. These services included laser hair removal, IPL photofacial, PRP injections, Botox, microneedling, chemical peels, Sofwave, and Emsculpt NEO.

19.     At all times material hereto, Defendant **CANDELA CORPORATION** manufactured, distributed, and marketed non-surgical aesthetic devices. Defendant **HOLLY HENNINGSON** worked for **CANDELA CORPORATION** to market and sell these products, as well as train and instruct buyers and users of these products.

20.     One of the products Defendant **CANDELA CORPORATION** manufactures, distributes, and markets is the GentleLase Pro. This product utilizes a 755 nm:YAG laser and is put forth by **CANDELA CORPORATION** to be used for laser hair removal, vascular and skin treatments.

21.     Defendant **HOLLY HENNINGSON** marketed, sold, trained users, and instructed users on the GentleLase Pro.

22.     On or about December 1, 2021, **TAYLOR STEPHANOS** was at **AQUA LASER STUDIO INC.**, multiple people under the direction and supervision of Defendants, **SHUMAN-FEINBERG** and HENNINGSON, performed a cosmetic procedure on **TAYLOR STEPHANOS** using the GentleLase Pro.

23.     On or about December 1, 2021, when the cosmetic procedure was performed on **TAYLOR STEPHANOS** at **AQUA LASER STUDIO INC.**, it was performed by employees of the Defendant who were being trained on the use of the GentleLase Pro.

24.     Prior to utilizing the GentleLase Pro, **JILLIAN PIERCE** performed dermaplaning on **TAYLOR STEPHANOS**' face. Dermaplaning is a minimally invasive procedure that shaves away the top layers of the skin. During this procedure, **TAYLOR STEPHANOS** received a laceration to her face.

25.     **JILLIAN PIERCE** used the GentleLase Pro on **TAYLOR STEPHANOS** and it was painful.

26.     **DOMINIQUE CLEARY EVANS** used the GentleLase Pro on **TAYLOR STEPHANOS** and it was painful, causing a burning sensation and was visibly noticeable as **TAYLOR STEPHANOS** was crying from the pain.

3

27.     During the procedure, **TAYLOR STEPHANOS** advised DEFENDANT, **SHUMAN-FEINBERG**, that she was in pain, DEFENDANT, **SHUMAN-FEINBERG**, and despite this, DEFENDANT, **SHUMAN-FEINBERG**, instructed her employees to continue.

28.     During this procedure, **TAYLOR STEPHANOS** was held down forcefully.

29.     During the entire time **TAYLOR STEPHANOS** was undergoing this procedure, **JILLIAN PIERCE** and **DOMINIQUE CLEARY EVANS** were operating and utilizing the GentleLase Pro under the direction and supervision of DEFENDANT, **SHUMAN-FEINBERG**.

30.     During the entire time **TAYLOR STEPHANOS** was undergoing this procedure, **JILLIAN PIERCE** and **DOMINIQUE CLEARY EVANS** received instructions, training, and supervision from **HOLLY HENNINGSON** in her capacity as an employee of **CANDELA CORPORATION**.

31.     At the time of the incident, **TAYLOR STEPHANOS** was attending cosmetology/esthetician school and relied upon the licensed facial specialists **JILLIAN PIERCE**, **DOMINIQUE CLEARY EVANS**, and **HOLLY HENNINGSON** because she reasonably believed that they had greater skill and knowledge in performing the above procedures based on their education and experience.

32.     The procedure discussed above caused **TAYLOR STEPHANOS** serious, permanent, injury to her face.

33.     All conditions precedent to filing this claim or they have been waived by the defense.

## COUNT I – NEGLIGENCE OF JILLIAN PIERCE

The Plaintiff re-alleges paragraphs 1 through 33 above.

34.     At all times material hereto, Defendant had a duty to act in a reasonable and prudent manner towards others, including the Plaintiff.

35.     At all times material hereto, Defendant had a duty to conform to the rules and regulations of her profession in accordance with her training and licensing.

36.     At all times material hereto, Defendant had a duty to operate the tools available to her in accordance with the instructions for those tools.

37.   At all times material hereto, Defendant breached those aforementioned duties in one or more of the following ways:

    a.  Failing to warn **TAYLOR STEPHANOS** with regards to the procedures performed including but not limited to that dermaplaning could result in greater sensitivity to laser hair removal treatment.

    b.  Causing injury to **TAYLOR STEPHANOS** during the dermaplaning procedure.

    c.  Failing to warn **TAYLOR STEPHANOS** with regards to the procedures performed including but not limited to of the dangers posed by the GentleLase Pro.

    d.  Negligently operating the GentleLase Pro so as to cause injury to **TAYLOR STEPHANOS**.

    e.  Failing to operate the GentleLase Pro in accordance with her training.

    f.  Failing to operate the GentleLase Pro in accordance with the applicable rules and regulations.

    g.  Failing to operate the GentleLase Pro in accordance with the instructions for the machine.

    h.  Negligently continuing the procedure when it was clear that the procedure was causing **TAYLOR STEPHANOS** significant pain and other signs that the procedure should be stopped.

    i.  Negligently continuing the procedure and causing greater injury to **TAYLOR STEPHANOS** despite her complaints of pain.

38.   As a result of the Defendant's negligence, the Plaintiff suffered bodily injury and resulting pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, lost earnings, loss of earning capacity, expense of hospitalization, medical and nursing care and treatment, and aggravation of a previously existing condition. The losses are either permanent or continuing and the Plaintiff will suffer the losses in the future.

WHEREFORE, the Plaintiff, **TAYLOR STEPHANOS**, sues the Defendant, **JILLIAN PIERCE**, for damages, costs, interest and any other relief which this Court may deem appropriate.

## COUNT II – NEGLIGENCE OF DOMINIQUE CLEARY EVANS

The Plaintiff re-alleges paragraphs 1 through 33 above.

39.     At all times material hereto, Defendant had a duty to act in a reasonable and prudent manner towards others, including the Plaintiff.

40.     At all times material hereto, Defendant had a duty to conform to the rules and regulations of her profession in accordance with her training and licensing.

41.     At all times material hereto, Defendant had a duty to operate the tools available to her in accordance with the instructions for those tools.

42.     At all times material hereto, Defendant breached those aforementioned duties in one or more of the following ways:

   a. Failing to warn **TAYLOR STEPHANOS** with regards to the procedures performed including but not limited to that dermaplaning could result in greater sensitivity to laser hair removal treatment.

   b. Failing to warn **TAYLOR STEPHANOS** with regards to the procedures performed including but not limited to of the dangers posed by the GentleLase Pro.

   c. Negligently operating the GentleLase Pro so as to cause injury to **TAYLOR STEPHANOS**.

   d. Failing to operate the GentleLase Pro in accordance with her training.

   e. Failing to operate the GentleLase Pro in accordance with the applicable rules and regulations.

   f. Failing to operate the GentleLase Pro in accordance with the instructions for the machine.

   g. Negligently continuing the procedure when it was clear that the procedure was causing **TAYLOR STEPHANOS** significant pain and other signs that the procedure should be stopped.

h.  Negligently continuing the procedure and causing greater injury to **TAYLOR STEPHANOS** despite her complaints of pain.

43.     As a result of the Defendant's negligence, the Plaintiff suffered bodily injury and resulting pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, lost earnings, loss of earning capacity, expense of hospitalization, medical and nursing care and treatment, and aggravation of a previously existing condition.   The losses are either permanent or continuing and the Plaintiff will suffer the losses in the future.

WHEREFORE, the Plaintiff, **TAYLOR STEPHANOS**, sues the Defendant, **DOMINIQUE CLEARY EVANS**, for damages, costs, interest and any other relief which this Court may deem appropriate.

## COUNT III – NEGLIGENCE OF DEFENDANT, SHUMAN-FEINBERG

The Plaintiff re-alleges paragraphs 1 through 33 above.

44.     At all times material hereto, Defendant had a duty to act in a reasonable and prudent manner towards others, including the Plaintiff.

45.     At all times material hereto, Defendant had a duty to operate her business in accordance with the licensing, rules, and regulations applicable to it.

46.     At all times material hereto, Defendant had a duty to maintain the premises.

47.     At all times material hereto, Defendant breached those aforementioned duties in one or more of the following ways:

a.  Failing to warn **TAYLOR STEPHANOS** with regards to the procedures performed including but not limited to that dermaplaning could result in greater sensitivity to laser hair removal treatment.

b.  Failing to warn **TAYLOR STEPHANOS** with regards to the procedures performed including but not limited to of the dangers posed by the GentleLase Pro.

c.  Failing to supervise and/or negligently supervising her employees, resulting in injury to **TAYLOR STEPHANOS**.

d.  Failing to train and/or negligently training her employees, resulting in injury to **TAYLOR STEPHANOS**.

e.  Failing to ensure that her employees complied with the applicable rules and regulations of their professions.

f.  Failing to ensure that her employees were operating the GentleLase Pro in accordance with the instructions for the machine.

g.  Negligently continuing the procedure when it was clear that the procedure was causing **TAYLOR STEPHANOS** significant pain and other signs that the procedure should be stopped.

h.  Negligently continuing the procedure and causing greater injury to **TAYLOR STEPHANOS** despite her complaints of pain.

i.  Negligently instructing her employees to restrain **TAYLOR STEPHANOS** during the procedure, preventing her from discontinuing the procedure, and thereby causing increased injury to her.

48.     As a result of the Defendant's negligence, the Plaintiff suffered bodily injury and resulting pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, lost earnings, loss of earning capacity, expense of hospitalization, medical and nursing care and treatment, and aggravation of a previously existing condition.   The losses are either permanent or continuing and the Plaintiff will suffer the losses in the future.

WHEREFORE, the Plaintiff, **TAYLOR STEPHANOS**, sues the Defendant, **SHUMAN-FEINBERG**, for damages, costs, interest and any other relief which this Court may deem appropriate.


## COUNT IV – VICARIOUS LIABILITY OF AQUA LASER STUDIO INC.

The Plaintiff re-alleges paragraphs 1 through 45 above.

8

49.     At all times material hereto, Defendant, **AQUA LASER STUDIO INC.**, was responsible for the actions and omissions of its employees, owners, agents, servants, and other people under its instruction, dominion, and control.

50.     At all times material hereto, Defendants **JILLIAN PIERCE**, **DOMINIQUE CLEARY EVANS**, and **SHUMAN-FEINBERG**, carried out the aforementioned actions and omissions in the course and scope of their employment and/or ownership of **AQUA LASER STUDIO INC.** and in furtherance of the business of **AQUA LASER STUDIO INC.**

51.     Defendant, **AQUA LASER STUDIO INC.**, is therefore vicariously liable for the negligence of the above-named Defendants.

52.     As a result of the Defendant's negligence, the Plaintiff suffered bodily injury and resulting pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, lost earnings, loss of earning capacity, expense of hospitalization, medical and nursing care and treatment, and aggravation of a previously existing condition.   The losses are either permanent or continuing and the Plaintiff will suffer the losses in the future.

WHEREFORE, the Plaintiff, **TAYLOR STEPHANOS**, sues the Defendant, **AQUA LASER STUDIO INC.**, for damages, costs, interest and any other relief which this Court may deem appropriate.

## COUNT V – NEGLIGENCE OF HOLLY HENNINGSON

The Plaintiff re-alleges paragraphs 1 through 33 above.

53.     At all times material hereto, Defendant had a duty to act in a reasonable and prudent manner towards others, including the Plaintiff.

54.     At all times material hereto, Defendant had a duty to conform to the rules and regulations of her profession in accordance with her training and licensing.

55.     At all times material hereto, Defendant breached those aforementioned duties in one or more of the following ways:

a. Failing to warn **TAYLOR STEPHANOS** with regards to the procedures performed including but not limited to that dermaplaning could result in greater sensitivity to laser hair removal treatment.

b. Failing to warn **TAYLOR STEPHANOS** with regards to the procedures performed including but not limited to of the dangers posed by the GentleLase Pro.

c. Failing to supervise and/or negligently supervising the employees of **AQUA LASER STUDIO INC.**, resulting in injury to **TAYLOR STEPHANOS**.

d. Failing to train and/or negligently training the employees of **AQUA LASER STUDIO INC.**, resulting in injury to **TAYLOR STEPHANOS**.

e. Failing to ensure that the employees of **AQUA LASER STUDIO INC.** complied with the applicable rules and regulations of their professions.

f. Failing to ensure that the employees of **AQUA LASER STUDIO INC.** were operating the GentleLase Pro in accordance with the instructions for the machine.

g. Negligently continuing the procedure when it was clear that the procedure was causing **TAYLOR STEPHANOS** significant pain and other signs that the procedure should be stopped.

h. Negligently continuing the procedure and causing greater injury to **TAYLOR STEPHANOS** despite her complaints of pain.

i. Negligently instructing her employees to restrain **TAYLOR STEPHANOS** during the procedure, preventing her from discontinuing the procedure, and thereby causing increased injury to her.

56.    As a result of the Defendant's negligence, the Plaintiff suffered bodily injury and resulting pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, lost earnings, loss of earning capacity, expense of hospitalization, medical and nursing care and treatment, and

aggravation of a previously existing condition.  The losses are either permanent or continuing and the Plaintiff will suffer the losses in the future.

WHEREFORE, the Plaintiff, **TAYLOR STEPHANOS**, sues the Defendant, **HOLLY HENNINGSON**, for damages, costs, interest and any other relief which this Court may deem appropriate.

## COUNT VI – VICARIOUS LIABILITY OF CANDELA CORPORATION

The Plaintiff re-alleges paragraphs 1 through 33 and 53 through 56 above.

57.     At all times material hereto, Defendant, **CANDELA CORPORATION**, was responsible for the actions and omissions of its employees, owners, agents, servants, and other people under its instruction, dominion, and control.

58.     At all times material hereto, Defendant **HOLLY HENNINGSON** carried out the aforementioned actions and omissions in the course and scope of her employment of **CANDELA CORPORATION** and in furtherance of the business of **CANDELA CORPORATION**.

59.     Defendant, **CANDELA CORPORATION**, is therefore vicariously liable for the negligence of the above-named Defendants.

60.     As a result of the Defendant's negligence, the Plaintiff suffered bodily injury and resulting pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, lost earnings, loss of earning capacity, expense of hospitalization, medical and nursing care and treatment, and aggravation of a previously existing condition.  The losses are either permanent or continuing and the Plaintiff will suffer the losses in the future.

WHEREFORE, the Plaintiff, **TAYLOR STEPHANOS**, sues the Defendant, **CANDELA CORPORATION**, for damages, costs, interest and any other relief which this Court may deem appropriate.


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues to triable as a matter of right.

I HEREBY CERTIFY that a true and correct copy of the foregoing was served pursuant to Fla. R. Jud. Admin. 2.516 via email to: **Manuel R. Comras, Esq.** Billing, Cochran, Lyles, Mauro & Ramsey, PA. (Counsel for Jillian Pierce)  mrc@blmr.com; wpb-pleadings@bclmr.com; katrina@bclmr.com**; Andrew G. Tuttle, Esq**. Fowler White Burnett, P.A., (Counsel for Candela and Henningson) atuttle@fowler-white.com; cknight@fowler-white.com; aemanuel@fowler-white.com; golivares@fowler-white.com ; **Steven Cripps, Esq.,** Orsley & Cripps, P.A., (Counsel for Evans) pleadings@orsleycripps.com this the 22nd day of January, 2024.

**COFFEY | MCPHARLIN**
Attorneys for Plaintiff
550 S. Andrews Avenue, Suite 600
Fort Lauderdale, Florida 33301
(954) 541-3194 – Main
(954) 947-8750 – Fax
pleadings@coffeymcpharlin.com

By: /s/ Todd McPharlin
TODD MCPHARLIN, ESQ.
Florida Bar No.: 114685





August 31, 2023

**VIA ELECTRONIC, FIRST CLASS AND CERTIFIED MAIL, Return Receipt Requested**

Aqua Laser Studio
775 W. Indiantown Rd., Ste. 5
Jupiter, FL  33458
aqualaser1015@gmail.com

RE:  Taylor Stephanos v. Jillian Pierce, Dominique Cleary Evans, Donna Shuman-Feinberg, Aqua Laser Studio Inc., Holly Henningson and Candela Corporation, Case No. 50-2023-CA-011495-MB in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida ("Claim")
**Declination of Insurance Coverage**
Insurer:              The Medical Protective Company
Named Insured:        Aqua Laser Studio[1]
Certificate Number:   U24678 ("Policy")
Policy Type:          Professional Liability – Occurrence
Policy Period:        02/26/2021 to 02/26/2022
Event Date:           12/01/2021

To Whom It May Concern:

MedPro Group on behalf of The Medical Protective Company (collectively "MedPro") acknowledges the above Claim and your request for insurance on behalf of Aqua Laser Studios, Jillian Pierce, Donna Shuman-Feinberg and Dominique Cleary Evans (collectively "Aqua Laser Defendants").  According to the Claim, the Plaintiff, Taylor Stephanos, sustained injury while undergoing a cosmetic procedure at Aqua Laser Studios on December 1, 2021.  Ms. Pierce and Ms. Evans were employees of Aqua Laser Studios along with the Plaintiff.  Ms. Shuman-Feinberg is alleged to be the owner of the studio.  The procedure at issue "was performed by employees of the Defendant who were being trained on the use of the GentleLase Pro."

After reviewing your request and the Policy, MedPro concludes that there is no insurance available to any of the Aqua Laser Defendants for the Claim because:  1) the Plaintiff and the Aqua Laser Defendants are insureds under the Policy and it excludes any **claim**[2] arising out of any dispute between insureds; and 2) the Policy excludes insurance for any **claim** arising out of injury to an employee working for Aqua Laser Studios.  Accordingly, **MedPro must respectfully decline the request for insurance and will not defend or indemnify the Aqua Laser Defendants against the Claim.**

The basis for MedPro's assessment is set forth below.

**THE POLICY**

**I.   COVERAGES**
   A.   Professional Liability

---

[1] Per General Provision K., Aqua Laser Studio shall act as the agent of, and with full authority to bind, all Insureds.  Please provide a copy of this declination to all of the Aqua Laser Defendants.
[2] Words and phrases in bold are defined terms under the Policy, and their definitions can be found in the Policy section of this letter

5814 Reed Road Fort Wayne, IN 46835  |  800-4MedPro  |  www.medpro.com

Physicians & Surgeons | Dentists | Chiropractors | Optometrists | Podiatrists | Hospitals
Healthcare Facilities | Healthcare Professionals | Excess and Surplus Lines | Alternative Risk

**We** shall pay those amounts an Insured is legally obligated to pay to compensate others for damages resulting from an **event** based upon a **wrongful act**. The **wrongful act** must take place during **your policy period.**

\* \* \*

GENERAL DEFINITIONS

Whenever used in this Policy:

H.      **Certificate** means the Certificate of Insurance page, including any Schedule of Insureds, if applicable provided to an Insured which describes specific information about the Insured, including but not limited to its **policy period**, coverages selected, specialty(ies), classification(s), limits of liability, policy number, and premium amounts.

I.      **Claim** means an express, written demand upon an Insured for money or services as compensation for civil damages.

P.      **Event** means an accident. . . .

Y.      **Named Insured** means the person or entity designated in Item 1(a) of **your Certificate.**

AA.      **Patient** means an individual who is undergoing medical **treatment** and care that is directed by a certified/licensed practitioner of the healing arts, as required by law, toward maintenance, improvement or protection of health or lessening of illness, disability or pain.

HH.      **Professional services** means **peer review** and medical **treatment** for those specialties listed in **your Certificate** or any other services listed by endorsement, for which an Insured is licensed as required by law, trained, and qualified to perform in the Insured's capacity as a Healthcare Professional. **Professional services** include services as an educator or as a member of a formal accreditation, standards review, or similar professional board or committee, including as a director or officer of such board or committee.

KK.      **Suit** means a civil proceeding in a court, and includes an arbitration proceeding.

MM.      **Treatment** means:
   1. The rendering of medical, surgical, dental, or nursing services to a **patient**;
   2. The provision of medical examinations, opinions, or consultations regarding a person's medical condition within an Insured's practice as a certified/licensed health care provider, as required by law; or
   3. The furnishing of any of the following, but only as it relates to the rendering of medical, surgical, dental, or nursing services to a **patient**:
      a.   counseling and social service;
      b.   food and beverages; or,
      c.   medical, surgical, or dental supplies, appliances, or drugs.

PP.      **Wrongful act** means rendering of or failure to render **professional services** that results in injury.

QQ.      **You** and **your** means the **Named Insured(s)** stated in Item 1(a) of **your Certificate** or identified on an endorsement as listed in **your Certificate**.

\* \* \*

GENERAL EXCLUSIONS

I.   EXCLUSIONS

This Policy shall not apply to any **claim** or **suit** based upon an **event**:

E.      Arising out of any dispute between two or more Insureds under the same **Certificate**.

I.      Arising out of injury or damage to:

   1. Employee(s) or independent contractor(s) working for an Insured; . . . .

5814 Reed Road Fort Wayne, IN 46835  |  800-4MedPro  |  www.medpro.com

Physicians & Surgeons | Dentists | Chiropractors | Optometrists | Podiatrists | Hospitals
Healthcare Facilities | Healthcare Professionals | Excess and Surplus Lines | Alternative Risk

J.   Arising out of any obligation under a workers' compensation, occupational disease, employer's liability, disability benefits, unemployment compensation, or any similar law.

\* \* \*

## MEDPRO'S ASSESSMENT

The Professional Liability Insuring Agreement[3] in relevant part provides defense and indemnity for amounts an Insured is obligated to pay to compensate others for damages resulting from an **event** ("an accident") based upon the rendering of, or failure to render, **professional services** that is not otherwise excluded.  Here, two exclusions apply to the allegations of the Claim such that no insurance is available under the Policy.

First, Exclusion E excludes insurance for any **claim** "arising out of any dispute between two or more Insureds under the same [Policy]."  Here, the Plaintiff, as an employee of Aqua Laser Studio is a **Named Insured** under the Policy as are all of the Aqua Laser Defendants.  Accordingly, the Claim is a dispute between Insureds under the Policy that is subject to Exclusion E and no insurance is available.

Second, Exclusion I excludes insurance for any **claim** "arising out of injury . . . to employee(s) or independent contractor(s) working for an Insured."  Here, as alleged in the Complaint, Ms. Stephanos was working for Aqua Laser Studios, an Insured, at the time of the alleged injury.  Accordingly, the Claim is subject to Exclusion I and no insurance is available.

Finally, to the extent that Aqua Laser Studios has any obligation for workers' compensation benefits or employer's liability, Exclusion J would exclude coverage for any such obligations.

Based on the foregoing, **MedPro must respectfully decline the request for insurance and will not defend or indemnify the Aqua Laser Defendants against the Claim.  <u>You should immediately act to protect your interests in responding to the Claim and report the matter to any other insurer that may provided coverage.</u>**

## CONCLUSION

The foregoing declination should not be considered all-inclusive or exhaustive of the Declarations, Insuring Agreements, Conditions, Definitions, Exclusions, and any endorsements and/or other provisions of the Policy that may bar coverage for other reasons, and this letter should not be construed as a waiver or estoppel of any coverage defenses afforded by the Policy or law. If you have any questions regarding the terms of this letter, you should seek the counsel of your own attorney at your own expense. If you believe I have stated anything in error, or if you have other facts or information to provide to MedPro regarding your insurance coverage, please address those to my attention immediately. Upon receipt, we will reexamine our coverage assessment. If you have any questions, please do not hesitate to call me.

Best regards,

*Noreen Russell*

Noreen M. Russell, MS
Claims Consultant – HCP Division
260-486-0808

---

[3] In addition to the insurance provided under the Professional Liability Coverage Part discussed in the body of this letter, the Policy also provides insurance under a number of other coverage parts and endorsements.  However, these additional coverage parts and endorsements are on their face clearly inapplicable to this matter.

5814 Reed Road Fort Wayne, IN 46835  |  800-4MedPro  |  www.medpro.com

Physicians & Surgeons | Dentists | Chiropractors | Optometrists | Podiatrists | Hospitals
Healthcare Facilities | Healthcare Professionals | Excess and Surplus Lines | Alternative Risk

5814 Reed Road Fort Wayne, IN 46835  |  800-4MedPro  |  www.medpro.com

Physicians & Surgeons | Dentists | Chiropractors | Optometrists | Podiatrists | Hospitals
Healthcare Facilities | Healthcare Professionals | Excess and Surplus Lines | Alternative Risk