IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

AQUA LASER STUDIO INC., a Florida
corporation, and DONNA FEINBERG
SHUMAN,

    Plaintiffs,

vs.	    Case No.: 9:25-cv-80374-AMC

THE MEDICAL PROTECTIVE
COMPANY, a foreign company,

    Defendant.
_____/

## THE MEDICAL PROTECTIVE COMPANY'S MOTION TO DISMISS

Defendant, The Medical Protective Company ("MedPro"), by and through the undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), moves to dismiss the Plaintiffs' Complaint for Declaratory Relief, ECF No. 1, with prejudice, and in support states as follows:

## INTRODUCTION

The Plaintiffs, Aqua Laser Studio, Inc. ("Aqua Laser") and Donna Feinberg Shuman ("Shuman") (collectively "Plaintiffs"), filed suit against MedPro seeking a declaration that MedPro's insurance policy provides coverage for an underlying lawsuit. A careful review of the insurance policy and the underlying allegations, however, reveals that the underlying claim is not covered based on the injury to employee exclusion. As this Court has explained, dismissal is appropriate "when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Venture Constr. Group v. Am. Guar. & Liab. Ins.*, 17-14372-CIV, 2018 U.S. Dist. LEXIS 36453, at *3 (S.D. Fla. Mar. 5, 2018) (quoting *Glover v. Liggett Grp., Inc.*, 459 F. 3d 1304, 1308 (11th Cir. 2006)). Because the underlying claims are

unequivocally excluded from coverage, Plaintiffs' Complaint for Declaratory Relief should be dismissed with prejudice.

I.   **BACKGROUND**

   A.   **The Underlying Lawsuit**

This coverage action arises from an underlying lawsuit filed by Taylor Stephanos ("Stephanos") in the case styled *Taylor Stephanos v. Jillian Pierce, et al.*, Case No. 50-2023-CA-011495, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach, County, Florida (the "Underlying Lawsuit"). ECF No. 1, ¶1. In the Underlying Lawsuit, Stephanos alleges she was injured during a cosmetic procedure performed on her by several individuals who, at the time, were being trained on the use of a particular laser. *See* Exhibit B to Plaintiffs' Complaint for Declaratory Relief, ECF No. 1, p. 47-58.[1] Stephanos asserts a negligence count against Shuman and a vicarious liability count against Aqua Laser. *Id.* at p. 53-55.

The Underlying Lawsuit contains the following relevant allegations:

> 12.   At all times material hereto, Plaintiff, TAYLOR STEPHANOS, and Defendants, JILLIAN PIERCE and DOMINIQUE CLEARY EVANS, were employees of AQUA LASER STUDIO INC.
>
> 13.   At all times material hereto, Defendant DONNA SHUMAN was an owner of AQUA LASER STUDIO INC.
>
> ***
>
> 18.   At all times material hereto, Defendant SHUMAN-FEINBERG operated AQUA LASER STUDIO INC. with the purpose of providing cosmetic services. These services included laser hair removal, IPL photofacial, PRP injections, Botox, microneedling, chemical peels, Sofwave, and Emsculpt NEO.
>
> 19.   At all times material hereto, Defendant CANDELA CORPORATION manufactured, distributed, and marketed non-surgical aesthetic

---

[1] MedPro notes, Plaintiffs attach and rely on the Amended Complaint filed in the Underlying Lawsuit – as opposed to the initial Complaint, which was the operative pleading considered by MedPro in making its coverage determination. Nevertheless, for purposes of MedPro's Motion, there does not appear to be any substantive difference in the underlying allegations and causes of action against Aqua Laser and Shuman.

> devices. Defendant HOLLY HENNINGSON worked for CANDELA CORPORATION to market and sell these products, as well as train and instruct buyers and users of these products.
>
> ***
>
> 22. On or about December 1, 2021, TAYLOR STEPHANOS was at AQUA LASER STUDIO INC., multiple people under the direction and supervision of Defendants, SHUMAN-FEINBERG and HENNINGSON, performed a cosmetic procedure on TAYLOR STEPHANOS using the Gentlelase Pro.
>
> 23. On or about December 1, 2021, when the cosmetic procedure was performed on TAYLOR STEPHANOS at AQUA LASER STUDIO INC., it was performed by employees of the Defendant who were being trained on the use of the Gentlelase Pro.
>
> ***

*Id.* at p. 48-50.

On August 31, 2023, MedPro issued a disclaimer of coverage based, in part, on an exclusion for injuries to an employee working for an insured. *See* Exhibit C to Plaintiffs' Complaint for Declaratory Relief, ECF No. 1, p. 59-62. According to the allegations in the instant action, Stephanos accepted the Plaintiffs' proposal for settlement and, as of December 20, 2024, Stephanos dismissed her claims against Plaintiffs with prejudice. ECF No. 1, ¶ 35.

    **B.**    **The Instant Coverage Action**

In this action, Plaintiffs allege that the amounts Plaintiffs allegedly expended in defending and settling the Underlying Lawsuit should have been the responsibility of MedPro. *Id.* at ¶¶36-37. Plaintiffs seek a declaration that the Multi-Specialty Healthcare Professional Policy MedPro issued to Aqua Laser, Policy No. U24678 (the "Policy"), provides coverage for Plaintiffs in the Underlying Lawsuit, as well as a declaration that MedPro was obligated to provide insurance coverage and a defense to Plaintiffs. *Id.* at p. 6. MedPro disputes these allegations and, instead,

3

contends the injury to employee exclusion applies to bar coverage for the Underlying Lawsuit.[2]

This exclusion states:

> This Policy shall not apply to any **claim** or **suit** based upon an **event**:
> \*\*\*
>
> I.  Arising out of injury or damage to:
>
>     1. Employee(s) or independent contractor(s) working for an Insured; or,
>
>     2. The spouse or relative of such employee(s) or independent contractor(s), as a consequence of injury or damage to the employee(s) or independent contractor(s).
>
>        a. This exclusion applies:
>           i. whether an Insured is liable as an employer or in any other capacity; or,
>           ii. to any obligation to share damages with or repay someone else who must pay damages because of the injury or damage.

*Id.* at p. 33.

Plaintiffs allege this exclusion does not apply because Stefanos was not serving in her role as an employee and, instead, was a "Patient" of Aqua Laser, citing only to the Policy definition of "Patient" in support. *Id.* at ¶¶ 12, 13, 19, 30-33. The Underlying Lawsuit, however, does not allege (or even suggest) that Stefanos was patient of Aqua Laser or that she was not serving as an employee at the time of the procedure. Rather, the Underlying Lawsuit alleges "[a]t all times material hereto," Stephanos was an employee of Aqua Laser and the cosmetic procedure was performed by other employees of Aqua Laser who were being trained on the use of the laser product. *Id.* at p. 48-49, ¶¶ 12, 22-26. These allegations make clear that Stefanos was an employee

---

[2] There are other policy provisions and exclusions that likely apply to preclude coverage, in addition to the injury to employee exclusion. In this Motion, MedPro's arguments are based only on the injury to employee exclusion, which applies to preclude coverage based on the four corners of the Underlying Lawsuit. MedPro reserves its rights to assert additional bases for no coverage, in the event this Motion is denied.

of Aqua Laser at the time of the procedure and, therefore, the injury to employee exclusion applies to preclude coverage.

### III. MEMORANDUM OF LAW

#### A. Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. In evaluating the legal sufficiency of a complaint, courts are bound to apply the pleading standard set forth in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Under this standard, the complaint "must. . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly,* 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Mid-Continent Cas. Co. v. Gozzo Dev., Inc.*, No. 17-cv-80362-MIDDLEBROOKS, 2017 U.S. Dist. LEXIS 134185, at *5 (S.D. Fla. July 19, 2017) (quoting *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993))).

This Court recently confirmed, "[w]hen considering insurance coverage disputes, Courts routinely dismiss complaints for failure to state a claim when a review of the insurance policy and the underlying claim for which coverage is sought unambiguously reveals that the underlying claim is not covered." *Beacon Accelerator Holdings v. Scottsdale Indem. Co.*, No. 23-80202-CIV-CAN, 2023 U.S. Dist. LEXIS 107276, at *12 (S.D. Fla. June 21, 2023) (quoting *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, 143 F. Supp. 3d 1283, 1291 (S.D. Fla. 2015) (collecting

5

cases), *aff'd sub nom. Stettin v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, 861 F.3d 1335 (11th Cir. 2017)).

    **B.**    **Principles of Insurance Contract Interpretation**

Interpretation of an insurance contract is a question of law to be decided by the Court without resorting to extrinsic evidence. *State Farm Fire & Cas. Co. v. Steinberg,* 393 F.3d 1226, 1230 (11th Cir. 2004); *Washington National Ins. Co. v. Ruderman,* 117 So.3d 943 (Fla. 2013). When interpreting insurance policies, "the language of the policy is the most important factor." *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (citing *Taurus Holdings, Inc. v. United States Fid. and Guar. Co.*, 913 So.2d 528, 537 (Fla. 2005)). Accordingly, Florida law requires that insurance contracts be given their clear and plain meaning and prohibits courts from rewriting contracts, adding meaning that is not present, or otherwise reaching results contrary to the intentions of the parties. *See, e.g., Taurus*, 913 So. 2d at 532. "[I]n construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *Port Consolidated, Inc. v. International Ins. Co.*, 826 Fed.Appx. 822, 826 (11th Cir. 2020). "In other words, a single policy provision should not be read in isolation and out of context, for the contract is to be construed according to its entire terms, as set forth in the policy and amplified by the policy application, endorsements or riders." *Swire Pac. Holdings v. Zurich*, 845 So. 2d 161, 177 (Fla. 2003).

"If a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Taurus,* 913 So. 2d at 532. A contract is ambiguous only when it is susceptible to two or more reasonable interpretations. *Continental Cas. Co. v. Wendt,* 205 F.3d 1258, 1261-62 (11th Cir. 2000). The Eleventh Circuit has cautioned that courts "should not strain to find ambiguity." *Travelers Prop. Cas. Co. v. Salt*

*'N Blue LLC*, 861 Fed.Appx. 920, 923 (11th Cir. 2018). "Only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule [about ambiguity] apposite." *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 412 F.3d 1224, 1228 (11th Cir. 2005).

An insurer must defend a lawsuit against its insured if the underlying complaint, when fairly read, alleges facts which create potential coverage under the policy. *See Lawyers Title Ins. Corp. v. JDC Corp.,* 52 F. 3d 1575, 1580 (11th Cir. 1995). However, "an insurer has no duty to defend a suit against an insured if the complaint upon its face alleges a state of facts that fails to bring the case within the coverage of the policy," or if the allegations of the complaint fall within a policy exclusion. *Marr Inv., Inc. v. Greco*, 621 So. 2d 447, 449 (Fla. 4th DCA 1993); *Clarendon America Ins. Co. v. Burlington Ins. Co.,* 677 F. Supp. 2d 1317, 1321 (S.D. Fla. 2009).

In determining whether an insurer has a duty to defend, the court must look to the allegations contained within the four corners of the complaint in the underlying action against the insured and apply the language of the policy to those facts. *Lawyers Title*, 52 F.3d at 1580; *James River*, 540 F.3d at 1275; *Philadelphia Indemnity Ins. Co. v. Yachtsman's Inn*, 595 F. Supp. 2d 1319, 1322 (S.D. Fla. 2009). Because the duty to defend must be determined <u>solely</u> from the four corners of the underlying complaint and the policy, extrinsic evidence outside the complaint and the policy should not be considered for purposes of determining an insurer's duty to defend. *See Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442-43 (Fla. 2005); *Atl. Cas. Ins. Co. v. Legacy Roofing of FL/Ahead Gen. Contrs. & Restoration, LLC*, No. 19-22043-Civ-Williams/Torres, 2020 U.S. Dist. LEXIS 133700, at *20 (S.D. Fla. July 27, 2020). Stated differently, "the general rule is that an insurance company's duty to defend an insured is determined solely from the allegations in the complaint against the insured, not by the true facts of the cause of action against the insured,

the insured's version of the facts or the insured's defenses." *United Specialty Ins. Co. v. Davis*, No. 18-62451-CIV, 2020 U.S. Dist. LEXIS 29255, at *15 (S.D. Fla. Feb. 18, 2020) (refusing to consider deposition testimony offered to contradict underlying allegations) (quoting *Amerisure Ins. Co. v. Gold Coast Marine Distributors, Inc.*, 771 So.2d 579, 580 (Fla. 4th DCA 2000)).

Because the duty to defend is broader than the duty to indemnify, if a court determines that there is no duty to defend, then as a matter of law there cannot be a duty to indemnify. *Health First, Inc. v. Capitol Specialty Ins. Corp.*, 747 F. App'x 744, 750 (11th Cir. 2018) (explaining that "a duty to indemnify cannot exist if there is no duty to defend" and further noting courts have "dismissed claims for indemnification upon a finding of no duty to defend.") (collecting cases).

### C. The Injury to Employee Exclusion Bars Coverage

The allegations in the Underlying Lawsuit arise out of injury to an employee (*i.e.*, Stefanos) working for Aqua Laser. Accordingly, the injury to employee exclusion applies to bar coverage for the Underlying Lawsuit.

To begin, the term "arising out of" is unambiguous in the context of a policy exclusion. *Taurus*, 913 So. 2d at 539. In *Taurus,* the Florida Supreme Court explained the phrase "arising out of" is "broader in meaning than the term 'caused by' and is construed to mean originating from, having its origin in, growing out of, flowing from, incident to or having a connection with." *Id.* (quotations and citations omitted). The Eleventh Circuit has likewise explained the "phrase 'arising out of' is not ambiguous and should be interpreted broadly." *James River*, 540 F.3d at 1275 (citing *Taurus*, 913 So. 2d at 539). In the context of similar employer's liability exclusions, this Court has explained that "an employer's liability exclusion for bodily injury to an employee 'arising out of and in the course of employment' encompasses claims that … may only have a limited causal relationship to employment." *Scottsdale Ins. Co. v. GFM Operations, Inc.*, 789 F.

8

Supp. 2d 1278, 1288 (S.D. Fla. 2011) (quoting *Sinni v. Scottsdale Ins. Co.*, 676 F. Supp. 2d 1319, 1333 (M.D. Fla. 2009)).  In this case, the Underlying Lawsuit certainly alleges a causal relationship between Stefanos' alleged injuries and her employment.

It does not appear that any Florida state or federal court has examined the specific language of MedPro's injury to employee exclusion; however, numerous courts have evaluated similar employer liability exclusions.  These cases are instructive.  Courts have reasoned that "the obvious intent and meaning of [business employee] exclusion clauses is to relieve the insuror of responsibility for liability incurred by the insured because of work connected injuries to his business . . . employees." *Capitol Specialty Ins. Corp. v. Royal Crane, LLC*, No. 14-CIV-60815-BLOOM/Valle, 2015 U.S. Dist. LEXIS 23983, at *15 (S.D. Fla. Feb. 26, 2015) (quoting *Griffin v. Speidel*, 179 So. 2d 569, 571 (Fla. 1965)).  "The logic in the exclusion [of injuries to employees] from coverage … is simple and compelling: the only coverage intended, and for which the premium has been paid, is the liability of the insured to the public, as distinguished from liability to the insured's employees." *Amtrust Int'l Underwriters Designated Activity Co. v. Triton Roofing & Restoration LLC*, No. 3:24-cv-00425-JAR-SJH, 2025 U.S. Dist. LEXIS 7197, at *7 (M.D. Fla. Jan. 14, 2025) (quoting *Florida Ins. Guar. Ass'n v. Revoredo*, 698 So. 2d 890, 892 (Fla. 3d DCA 1997)).  Although many of these cases discuss these exclusions in the context of commercial general liability policies, the reasoning applies with equal force to professional liability policies – like the MedPro policy – which are generally intended to provide coverage for injuries suffered by patients or clients of an insured, not an insured's employees.

In this case, the Underlying Lawsuit alleges that "[a]t all times material hereto," Stephanos was an employee of Aqua Laser and the cosmetic procedure was performed by employees of Aqua Laser who were being trained on the use of the laser product.  ECF No. 1, p. 48-49, ¶¶ 12, 22-26.

9

These allegations establish application of the injury to employee exclusion because Stefanos was an employee of Aqua Laser at the time of the procedure and there is a causal connection between her employment and alleged injuries. *See Amerisure Ins. Co. v. Walker*, 11-61480-CV, 2011 U.S. Dist. LEXIS 132959, 2011 WL 5597325, *3 (S.D. Fla. Nov. 17, 2011) (no duty to defend or indemnify where injured party stated in underlying complaint that he was an employee, triggering employer's liability exclusion).

Plaintiffs attempt to avoid application of the injury to employee exclusion by alleging Stefanos was not "serving in her role" as an employee and was instead a patient of Aqua Laser. The Underlying Lawsuit, however, does <u>not</u> allege that Stefanos was a patient or that she was not serving in her role as an employee.  Plaintiffs' allegations in this regard are irrelevant and should not be considered, because the Court is limited to the four corners of the underlying complaint in deciding MedPro's duty to defend. *Jones, Foster, Johnston & Stubbs, P.A. v. Prosight-Syndicate 1110 at Lloyd's*, 680 Fed. Appx. 793, (11th Cir. 2017) ("the actual facts of the situation are not pertinent; the trial court is restricted to the allegations of the complaint, regardless of what the defendant and others say actually happened.") (internal quotations and citations omitted).  *See also supra*, p. 7-8.

A similar argument was raised and rejected by the Court in *Amtrust*.  In that case, the insured (Triton) was hired to re-roof several structures as part of a construction agreement and entered into a subcontract with another company to provide services for the project. *Amtrust*, 2025 U.S. Dist. LEXIS 7197, at *2-3.  Davis was employed to work on the project and was injured when he slipped and fell twelve feet to the ground while working on the project. *Id.* at *3.  Davis filed suit against Triton and, in his complaint, alleged that he was employed by Triton.  *Id.*

In the coverage litigation, Amtrust moved for summary judgment, arguing it had no duty to defend or indemnify Triton based on an exclusion for injuries to employees. *Id.* at *7-8. Triton sought to avoid application of the exclusion by arguing that Davis's employment status was unclear and discovery had revealed Davis was an employee of the subcontractor—not Triton—at the time of his fall. *Id.* at *8. The Court rejected Triton's argument and entered summary judgment in favor of Amtrust. *Id.* at *9-15. The Court declined to consider information obtained through discovery, explaining it was "limited to the allegations of the complaint in the Davis action … [and] any inconsistency between the actual facts surrounding Mr. Davis's employment and the allegations Mr. Davis made in the Davis complaint is resolved in favor of the allegations in the Davis complaint." *Id.* at * 9-10 (citing *Baron Oil Co.*, 470 So. 2d at 814 (citing *Nat'l Union Fire Ins. Co.*, 358 So. 2d 533; *Fed. Ins. Co.*, 377 So. 2d 229)). As a result, the Court found Amtrust had no duty to defend based on the employee exclusion and, because Amtrust had no duty to defend, it likewise had no duty to indemnify. *Id.* at *10, *13-15.

In this case, Court is limited to the allegations in the Underlying Lawsuit to decide MedPro's duty to defend—not the version of facts Plaintiffs have asserted in their Complaint for Declaratory Relief. As noted above, the allegations in the Underlying Lawsuit make clear that "[a]t all times material hereto," Stephanos was an employee of Aqua Laser. ECF No. 1, p. 48, ¶ 12. In addition, Stephanos's alleged injuries occurred during a cosmetic procedure performed by Aqua Laser employees who were being trained on the use of the laser product. *Id.* at p. 49, ¶¶ 22-26. These are the allegations MedPro considered in making its coverage determination. The allegations establish a causal connection between Stephanos's alleged injuries and employment and make clear that the underlying claims arise out of injury to an employee working for an insured. Because the allegations in the Underlying Lawsuit fall within the unambiguous language

11

of the injury to employee exclusion, MedPro has no duty to defend Plaintiffs in connection with the Underlying Lawsuit.  Since MedPro has no duty to defend Plaintiffs, MedPro correspondingly owes no duty to indemnify Plaintiffs.

## CONCLUSION

Because the injury to employee exclusion precludes coverage for the Underlying Lawsuit, MedPro respectfully requests the Court dismiss Plaintiffs' Complaint for Declaratory Relief against MedPro with prejudice.

Respectfully submitted this 24th day of April, 2025.

> TRAUB LIEBERMAN STRAUS
>  & SHREWSBERRY LLP
>
> /s/ *Michael K. Kiernan*
> MICHAEL K. KIERNAN, Esq.
> FBN: 391964
> mkiernan@tlsslaw.com
> ASHLEY R. KELLGREN, ESQUIRE
> FBN: 86021
> akellgren@tlsslaw.com
> 55 First Street South
> St. Petersburg, Florida 33701
> (727) 898-8100 (Tel)
> (727) 895-4838 (Fax)
> Counsel for Defendant,
> THE MEDICAL PROTECTIVE
> COMPANY

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of April, 2025, a true and correct copy of the foregoing was filed with the Clerk of Court by using the CM/ECF system, which will send a Notice of Electronic filing to counsel of record.

> /s/ *Michael K. Kiernan*
> MICHAEL K. KIERNAN, Esq.
> FBN: 391964

mkiernan@tlsslaw.com  
ASHLEY R. KELLGREN, ESQUIRE  
FBN: 86021  
akellgren@tlsslaw.com  
55 First Street South  
St. Petersburg, Florida 33701  
(727) 898-8100 (Tel)  
(727) 895-4838 (Fax)  
Counsel for Defendant,  
THE MEDICAL PROTECTIVE COMPANY